STEPHEN G. TALLMADGE *vs.* ROBERT M. PENOYER.

If a partner borrows money, avowedly, for the use of the firm, and in addition appropriates it to their use, the other partners are liable, upon the principle of agency, on the score of his authority, as a member of the firm, to borrow money for their benefit.

This is so, in some cases, where the money being borrowed upon a representation that it is for the use of the firm, is in fact misapplied by the borrowing partner, and not devoted to the use of the firm.

But money originally borrowed by one partner in his individual capacity, and a third person, upon their joint note, and subsequently by the consent of such third person, agreed to be appropriated to the borrowing partner's individual use, cannot be collected of the firm, or the other partner, merely from the fact that they have had the benefit of it in their business, or that the account of it is entered on their books; especially where the evidence shows that neither the original loan, nor that from the third person to the borrowing partner, was made upon the credit or for the benefit of the firm.

In an action against the other partner, to charge him with the money thus borrowed, evidence that the borrowing partner was in the habit of borrowing money for the use of the firm, and giving the notes of the firm therefor, is not pertinent to the issue.

Nor is evidence that at about the time of such loan, the borrowing partner applied to another person, to borrow money, to pay on a partnership debt, and on obtaining it, gave a partnership note therefor, admissible.

THE action was brought by the plaintiff to recover the sum of $200, with interest from the 15th day of May, 1854, upon a note signed by Henry M. Penoyer and Stephen G. Tallmadge, bearing date on that day and given to Abram Coon, which note the plaintiff claimed to own under an assignment and transfer of the same to him by Coon, and which sum of money he alleged was used by the firm of R. S. & H. M. Penoyer. The answer was a general denial. On the trial of the action the plaintiff was nonsuited. The facts in the case, as they appear from the testimony, are as follows: Abram Coon loaned to Henry M. Penoyer and Stephen G. Tallmadge $200, in May, 1854, for which he took the note of Henry M. Penoyer and Stephen G. Tallmadge, dated May 15th, 1854. This $200 was borrowed by Henry M. Penoyer and Stephen G. Tallmadge for the purpose of loaning it to Samuel Spears, in order to start him in business. Spears

Tallmadge *v.* Penoyer.

did not need the money. As soon as this was ascertained, Henry M. Penoyer saw Tallmadge and said to him, "Spears does not want this money; now, about this money, what shall we do with it?" He (Henry M. Penoyer) said, "*I* should like to use it for a short time *myself.*" Tallmadge told him to do so. It was Tallmadge's proposition to raise the money for Spears. Tallmadge testified that the note was signed by Henry, and was in his own name. Henry M. Penoyer died in September, 1854. On the 10th of March, 1858, Tallmadge paid the amount of this note to Coon, by giving him his own note, and took an assignment thereof, and of any claim that Coon might have against the firm of R. S. & H. M. Penoyer. At the time of Henry M. Penoyer's death, and for some time previous thereto, Henry M. Penoyer and Robert S. Penoyer were in partnership, under the firm name of R. S. & H. M. Penoyer, in dry goods business, and in lumber and land. Henry was principal manager of the dry goods business. In 1854 Robert was at the west. He was away at the time the above mentioned note was given. Abram Coon, previous to the time of his loaning this $200 to Henry M. Penoyer and Stephen G. Tallmadge, had loaned money to the firm of R. S. & H. M. Penoyer, but for such loans had always received notes signed in the name of the firm. Barent Mesick had also loaned money to the firm, but had received therefor a note signed in the partnership name. On the top of a page of a book, introduced in evidence by the plaintiff, was written, "notes of R. S. & H. P.," and near the bottom, "no note, Abram Coon, 200, May 15, '54." Shortly after Henry M. Penoyer's death, Robert S. Penoyer was looking at this page in the presence of Barent Mesick, and when he read over this 200, asked, "what was that got for?" Mesick said he supposed it was the $200 Henry and Tallmadge had borrowed of Coon. Robert S. Penoyer replied that he "knew nothing about it."

Exceptions were taken by the plaintiff to the rulings of

the judge, in excluding testimony offered by the plaintiff, and in granting the defendant's motion for a nonsuit.

The plaintiff appealed from the judgment of nonsuit.

*G. W. Bulkley,* for the appellant.    I.  In regard to the first question of fact upon which the court nonsuited the plaintiff and refused to let him go to the jury, viz. whether the $200 was not used by the firm, and applied for its benefit, the proof was sufficient to charge the firm.    Entries made by one partner, during the copartnership, in the partnership books, are evidence against the other partners.    (15 *John.* 409.    5 *Wend.* 253.    7 *id.* 441.    5 *Sandf.* 237.)

II.  As to the second question of fact, viz. whether the debt was not accepted, treated and acknowledged as a liability of the firm, by both the copartners, and a debt which they were bound to pay — we insist that the exhibiting the company books, and the list of moneys borrowed by the surviving partner, and asserting that these were the liabilities of the firm, was an express acknowledgment by the defendant that this $200 was a debt of the firm.    When a debt is contracted by one member of a firm, the assent of the other partner may be implied from facts and circumstances; an express assent need not be shown.    (14 *Wend.* 133.)    One member of a firm may bind the firm by receiving money for the firm.    (*Chit. on Con.* 9th ed. 250, 260.    *Coll. on Part.* 384, 391, 394.)    And the lender is not bound to show that the money has been applied to partnership purposes.    (16 *Wend.* 505.    17 *id.* 47.)    When money is borrowed by one of several copartners, not expressly on his individual credit, and it is shown to have been appropriated to the uses of the firm, the firm are liable.    (16 *John.* 38.    19 *id.* 157.    16 *Wend.* 505.    11 *id.* 75.    *Gow on Part.* 343–349.    6 *Hill,* 119.)    When money of a third person is in the hands of a member of a firm, *as a trustee* or otherwise, and is applied by him to the uses of the firm, the firm are liable.    (6 *Cowen,* 497, 502. 7 *Paige,* 26.)

Tallmadge *v.* Penoyer.

III. The judge erred in excluding the evidence offered. That was proper evidence to be submitted to the jury, as showing that Henry was authorized to borrow and receive money for the firm. (2 *Cowen & Hill's Notes*, 757.)

*Tobey & Silvester*, for the respondent. I. No error was committed by the court in excluding the offer of the plaintiff to show, by Abram Coon, that in the spring of 1854, and for some time previous thereto, Henry M. Penoyer was in the habit of negotiating for loans of money individually, and giving the copartnership note for the same, and that Robert S. Penoyer, his copartner, was knowing thereto. It was entirely immaterial, for the purposes of this action, whether Henry M. Penoyer, in the transaction of the business of the firm of R. S. & H. M. Penoyer, had or had not been in the habit of negotiating for loans of money, and giving the partnership note for the same, and whether Robert S. Penoyer was knowing thereto. The note in controversy was not a partnership note; the name of the firm was not signed to it; the signature to the paper was that of *Henry M. Penoyer*, and the fact of Henry M. Penoyer having given a note signed with the partnership name, for money borrowed for partnership purposes, or having given such note for money borrowed for his individual purposes, would not tend to prove that money for which Henry M. Penoyer's *individual note* was given went into the partnership business, but rather the reverse. The testimony could have no possible bearing upon the case—would prove nothing whatever with respect to a note to which the individual name of *Henry M. Penoyer alone* was signed.

II. The ruling of the court in excluding the offer of the plaintiff to show by Barent Mesick that, within two days succeeding the date of the entry on the book spoken of by him, Henry M. Penoyer applied to him for the loan of money to be used, as he stated at the time, to pay off a copartnership mortgage of $3000 on western lands, and on that occasion

the witness loaned to him $400, and took the copartnership note therefor, was correct. (1.) This witness had already testified with respect to the $400, that he had a note for it in the partnership name, and it was unnecessary that the same fact should be proved a second time by the same witness. (2.) The use to which Henry M. Penoyer applied the $400 borrowed of Mesick, and for which he gave the firm note, or the intention with which he borrowed it, was immaterial in this action. There was no question as to the liability of Robert S. Penoyer as one of the partners, upon that note. (3.) The declarations of Henry M. Penoyer, who is not a party to this action, at the time of borrowing money of Barent Mesick, for which he gave the partnership note, with respect to the object for which he wished to borrow the money, cannot be proper or material evidence in an action against Robert S. Penoyer, in which it is sought to make him liable for money borrowed of Abram Coon at a different time, and for which the note of Stephen G. Tallmadge and Henry M. Penoyer was given. (4.) The testimony could have had no other effect than to show that Henry M. Penoyer, at the time of borrowing the $400 of Mesick, and giving him the note signed with the partnership name, informed him that the firm needed the money, of which the borrowing of the money and the giving of the note were proof equally as strong. That he wanted to apply that money for a certain purpose, does not show that the money borrowed of Coon at a different time, upon Henry M. Penoyer's individual note, was applied for any purpose of the firm, but the reverse.

III. The ruling of the court in excluding the question addressed to the witness Barent Mesick, "At the time Robert S. Penoyer spoke to you about the 200, what did he say about the $400 Henry had borrowed of you," was correct. (1.) The question had no pertinency to the issue. What Robert S. Penoyer might have said with respect to $400, for which the note of the firm had been given, and which note he had seen, could have no bearing whatever upon a note

Tallmadge *v.* Penoyer.

signed by Henry M. Penoyer, in his individual name, for $200. (2.) The transactions between Barent Mesick and the firm of R. S. & H. M. Penoyer, or Robert S. Penoyer, were not involved in this action, and what transpired at any interview between Mesick and Penoyer in respect to the $400 which the firm had borrowed of him, could not be proper or material testimony in an action upon the note in controversy.

IV. No error was committed by the court in refusing to submit the case to the jury, and in granting the motion for a nonsuit. There was no evidence to be submitted to the jury, from which they would be warranted in inferring that the $200 in dispute was loaned to the firm of R. S. & H. M. Penoyer by Coon, or that he ever became the creditor of the firm for that amount, or that it was used by or applied for the benefit of the firm, or that it was accepted, treated or acknowledged as a liability of the firm by both or either of the copartners, or as one of the debts which the firm was bound to pay. The testimony of Coon, Mesick and Tallmadge shows that there was no connection whatever between the note in controversy, or the $200, and the firm of R. S. & H. M. Penoyer, or Robert S. Penoyer.

V. Assuming that the $200, subsequently to the making of the note, was used in the business of the firm, there was no question of fact to be submitted to the jury. The question was one of law for the decision of the court. If such were the facts, the law interposed, and exonerated the defendant from any liability. (1.) There is no dispute, upon the facts, that the money was *originally* borrowed upon the credit of the plaintiff and Henry M. Penoyer, and for a. specific purpose. Any subsequent arrangement between Henry M. Penoyer and the plaintiff, by which the money was diverted from its original purpose to the use of Henry M. Penoyer or of the firm, could not create any liability against the firm or against Robert S. Penoyer, in favor of the original lender or any person claiming through him. The principle is well established that if a partner borrows money on his own credit,

and afterwards applies it to the payment of partnership debts, or to other partnership purposes, this does not make the original lender a creditor of the firm. (*Collyer on Part.* 356, § 391. *Bevan* v. *Lewis*, 1 *Sim.* 376. *Green* v. *Tanner*, 8 *Metc.* 411. *Graeff* v. *Hitchman*, 5 *Watts*, 454. *Wiggins* v. *Hammond*, 1 *Missouri Rep.* 121. *Loyd* v. *Freshfield*, 2 *Car. & P.* 325. *Story on Part.* § 140. 3 *Kent's Com.* 41, 42. *Collyer on Part.* 429, § 476, *last part of section, and* §§ 477, 480. *Id.* 430, § 478. *Emly* v. *Lyle*, 15 *East*, 6. *Jaques* v. *Marquand*, 6 *Cowen*, 497. *Coster* v. *Clarke*, 3 *Edwards*, 411. *Collyer on Part.* § 474; *p.* 396, § 440. *Elliott* v. *Dudley*, 19 *Barb.* 326. *Mercien* v. *Andrus*, 10 *Wend.* 461.) (2.) The testimony is explicit and uncontradicted that Henry M. Penoyer's individual name was signed to the note; that he was an accommodation signer; that the money was loaned upon the credit and responsibility of the plaintiff and Henry M. Penoyer, for a specific purpose which was known to the lender. The partnership did not appear in the inception or making of the note. In the subsequent conversation between Henry M. Penoyer and the plaintiff, after it was ascertained that Spears did not want the money, the partnership was not mentioned, but the plaintiff testifies that Henry M. Penoyer said *he* would like to use the money a short time *himself*. If Henry M. Penoyer had subsequently used the $200 in the business of the firm, he would have become as to that amount a creditor of the firm, but the original lender or the plaintiff would not thereby have acquired any claim against the firm or the defendant. The claim of the original lender would still have been against the signers of the note, and no others; the claim of the plaintiff would have been and is only against Henry M Penoyer and his representatives, while Henry M. Penoyer and his representatives would be the creditors of the firm as to that amount. (3 *Kent's Com.* 42, *mar.* *Siffkin* v. *Walker*, 2 *Campb.* 308. *Ripley* v. *Kingsbury*, 1 *Day*, 150, *note.* *Emly* v. *Lyle*, 15 *East*, 7. *Bevan* v. *Lewis*, 1 *Sim.* 376. *Willis* v. *Hill*, 2 *Dev. & Bat-*

Tallmadge *v.* Penoyer.

*tle,* 231. *Jaques* v. *Marquand,* 6 *Cowen,* 497. *Coster* v. *Clarke,* 3 *Edw. Ch.* 411. *Collyer on Part.* § 474; *p.* 396, § 440. *Elliott* v. *Dudley,* 19 *Barb.* 326. *Mercien* v. *Andrus,* 10 *Wend.* 461.) (3.) The plaintiff bases his right to recover, entirely upon the assignment from Coon. He can assert against the defendant only such claim as is conferred by that assignment. He occupies the position that Coon did before the assignment. If Coon could enforce the collection of the note against Robert S. Penoyer, or the collection of the money, the plaintiff can; if not, the plaintiff cannot. That Coon, the original lender, could not recover the amount of this note of the firm or of the defendant, is a point upon which the authorities are express. (*See authorities cited in subdivisions* 1 *and* 2.)

VI. The entry in the book which was introduced in evidence did not show any connection between the note in controversy and the firm; it is not identified as referring to this note.

VII. In order to charge the defendant with any liability for this note or the $200, it was necessary for the plaintiff, even upon his own theory, to show that Robert S. Penoyer not only knew of the application of this sum to the use of the partnership, but assented thereto; and this assent, in the language of the authorities, is an *affirmative fact,* which must be *proved, and cannot be inferred* from any knowledge of the transaction which the defendant might have had at the time, or subsequently acquired. The entry in the book does not of itself show any knowledge even by Robert S. Penoyer of the application of this $200, or of any funds, by Henry M .Penoyer to the use of the partnership, or any assent thereto; for the entry is in Henry M. Penoyer's handwriting, while the testimony of the plaintiff's own witness, Barent Mesick, is that Robert S. Penoyer, on being spoken to about this entry and the $200, said that he knew nothing about it; thus expressly negativing the presumption that he had ever assented thereto.

(*Elliott* v. *Dudley*, 19 *Barb*. 328. *Mercien* v. *Andrus*, 10 *Wend*. 461.)

VIII. There was no dispute upon the facts; the only witnesses who had been sworn and had testified, were the witnesses of the plaintiff; there was no question of fact for the jury to pass upon. It was exclusively a question of law for the decision of the court, and the judgment of the court directing a nonsuit should be affirmed.

HOGEBOOM, J. The object of this suit is to charge the defendant, as a former partner of Henry M. Penoyer, deceased, with $200 borrowed by the latter and claimed to have been appropriated to the use of the firm.

1. The money was originally borrowed by the plaintiff and Henry M. Penoyer, in their individual names and on their individual note, of Abram Coon, the assignor of the plaintiff. There is no pretense that this would make the defendant liable, or tend to do so.

2. The borrowers, Tallmadge and H. M. Penoyer, having procured the money for a friend, who before it was received by him had no occasion for it, they debated among themselves what to do with it. H. M. Penoyer said *he* should like to use it for a short time *himself*. The plaintiff told him to do so. Thus far there is nothing to hold the defendant liable to any person, but only the plaintiff and H. M. Penoyer to Coon; and as between the plaintiff and H. M. Penoyer, the latter became the principal debtor.

3. H. M. Penoyer having thus procured possession of the money, probably applied it to the use of the firm of R. S. & H. M. Penoyer; at least there is, I think, sufficient evidence to go to the jury on that point. But that alone is not, I think, sufficient to charge the firm (or the defendant as a member of it) as debtors to Coon, or to Tallmadge; for one partner may borrow money of whom he pleases, and devote it to what purpose he pleases, without making the firm liable. If indeed he borrow money *avowedly* for the benefit of the

firm, and in addition appropriate it to their use, the other partners are liable upon the principle of agency, upon the score of his authority, as a member of the firm, to borrow money for their benefit. And this is so, in some cases, where the money being borrowed upon such a representation—that it is for the use of the firm—and loaned in reliance upon the truth of that representation, is in fact misapplied by the borrowing partner, and not devoted to the use of the firm. For it is not always necessary that the lender should trace the money into the hands or business of the firm, to make the firm liable.

But I am not aware of any case, or any principle, whereby money originally borrowed by one partner (and a third person) in his individual capacity and subsequently by the consent of his co-borrower, agreed to be appropriated to that partner's individual use, can be subsequently collected of the firm or the other partners, from the simple fact that they have had the benefit of it in their business, or that the account of it is entered on their books.

If these, therefore, are the only facts on which the plaintiff relies, I regard them as insufficient to enable the plaintiff, either in his own right, or as assignee of Coon, to sustain the action against the defendant.

4. But the plaintiff claims that on the books of the firm, in a list of "Sundry notes given by R. S. & H. M. Penoyer," is this entry: "No note; *Abram Coon, May* 15, 1854, $200;" and that the defendant as a member of the firm is chargeable with a knowledge of this entry in the handwriting of H. M. Penoyer; and that its legal effect is to charge the defendant with this loan.

But this is not its necessary effect; and the only question is, whether the evidence is sufficient to go to the jury. It is to be observed, 1. That it is not the entry of the defendant himself. 2. That it does not necessarily show that the money went to the use of the firm; or if it did, that the firm were liable for it as original debtors, to the lender of the money.

For it would be a proper entry as between the Penoyers themselves, if H. M. Penoyer had borrowed the money solely on his individual account, and subsequently loaned it to the firm.    3. That it therefore fails to connect the firm with Coon in the relation of *borrowers* and lender, except only in an indirect, indefinite and inferential way.

5. But it is further claimed that the defendant has otherwise admitted his liability to pay this debt, and treated and recognized it as one of the debts of the firm.    To two witnesses (Coon and Mesick) he showed the book containing the entry just discussed and other entries, sought an explanation himself in regard to it, and to one of the witnesses (Mesick) said that he *knew nothing about it.*    To another witness, (Rogers,) the administrator of his deceased brother, and partner H. M. Penoyer, he also, upon request, exhibited the book containing this entry and other entries, the object of the administrator being to ascertain the condition of the estate of the deceased, and the book being exhibited to him for such purpose.

6. This is the substance of the evidence on which the plaintiff claimed to go to the jury to recover of the defendant. And I incline to think, after much consideration, that it is insufficient to justify the jury in rendering a verdict for the plaintiff, and therefore that the judge might in his discretion properly withhold it from their final consideration: 1. Because in itself it is slight, unsatisfactory and inconclusive. 2. Because the residue of the evidence pretty distinctly shows that neither the loan from Coon nor from Tallmadge (if the latter can be said to have made a loan) was made upon the credit or for the benefit of the partnership ; nor did they become the debtors of the lender.

7. The offers of evidence were, I think, properly rejected. 1. Evidence to show that H. M. Penoyer, with the knowledge of the defendant, was in the habit of negotiating for loans of money individually, and giving therefor the notes of the copartnership, did not present a case parallel to the present

one, and would leave it still a matter of dispute whether the partnership would be liable for loans thus obtained. 2. Evidence to show that shortly after the entry of the Coon transaction, Henry M. Penoyer applied to another person for a loan of money avowedly to pay a partnership debt, which loan was made and the partnership note taken therefor from Henry, presented a case not connected with the present transaction, and not very nearly akin to it, and was, I think, properly rejected.

On the whole, I think the nonsuit was justifiable, and that the judgment of the circuit court should be *affirmed*.

GOULD, J. The exceptions to the exclusion of two or three pieces of evidence, offered by the plaintiff, do not seem to be well taken. It certainly was not pertinent to the issue, whether or not H. M. Penoyer was in the habit of borrowing money for the use of the firm, and giving the notes of the firm therefor. Since, in the case before us, the note given was *not* the note of the firm; and to make the firm liable, it was necessary to show either a borrowing on the credit of the firm, or that the money did in fact actually go to the benefit of the firm.

The offer to show that, about the time this money was borrowed of Coon, Henry Penoyer applied to Mesick to borrow money to pay on a $3000 mortgage of the firm, and borrowed of Mesick $400 for that purpose, for which money he gave the note of the firm, certainly was not an offer of testimony material to the matter of a borrowing proved to be for a different purpose, and on a different description of note.

Indeed there is no pretense or question that the original contract of borrowing money was actually, as well as apparently, on a particular note, and for a specific purpose, with which the firm had nothing to do. And, after the loan was completely made, for that purpose, and on that note, Coon certainly could not be made a partnership creditor, without

any change in the security, or in the contract, and without his own knowledge or consent. And if Coon was not a partnership creditor, his assignee cannot be. There is *no* proof in this case to support a finding for either him, or his assignee. Should it be supposed that the plaintiff himself lent the money to the firm, and so has a right to recover in this action, it would be answered that, on his own testimony, the using of the money was by Henry Penoyer for his individual benefit, as the plaintiff must be presumed to have understood; and that to overcome that testimony, the plaintiff had, at least, the burden of showing, *affirmatively*, that the money did go to the use of the firm. And in the case there is not proof on this point sufficient to sustain a verdict, even had one been found for the plaintiff. The proof tending that way is of the faintest sort; and the entry that $200 was borrowed *by the firm, of Coon, on. no note*, is *proved untrue.* Whatever else was true, *that* was not. And such an entry cannot be sufficient to establish a totally different liability, to a different person.

The judgment of the circuit should be *affirmed.*

WRIGHT, J. concurred.

Judgment affirmed.

[ALBANY GENERAL TERM, September 2, 1861. *Wright, Gould* and *Hogeboom,* Justices.]