THE ONTARIO BANK, Respondent, *v.* JOHN D. HENNESSEY, impleaded, etc., Appellant.

In forming a copartnership the parties can stipulate as between themselves that one partner shall be free from liability for loss, or that his liability be limited, and where one is to have a share of the profits of a business in consideration of his share of capital invested and imperiled therein, whatever may be the intent of the parties, this, as to third persons, makes him a partner.

Where, in a copartnership agreement between A. and B., no firm name is expressly adopted, but A. is to give his personal attention to and have entire control and management of the business, with authority to arrange and negotiate the acceptance of drafts, B. to incur no risks and to assume no responsibility, it is a fair inference that the copartnership business is to be done in the name of A., and B. is liable upon a draft drawn by A. in his individual name, procured to be discounted by him for the benefit of the firm, and avails applied to its use, although at the time the draft was discounted B. was not known to the payee as a partner. (GRAY, C., dissenting.)

(Argued January 8, 1872 ; decided May term, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial district, affirming a judgment in favor of plaintiff entered upon a verdict, and also from an order denying a motion for a new trial.

The action was brought to recover the amount of a bill of

exchange drawn by Angus McDonald, one of the defendants, at Hamilton, Canada West, in his own name, on W. H. Newman, New York, to the order of plaintiff, for $4,000 in gold, at thirty days. The name of defendant, John D. Hennessey, does not appear upon the draft. The action was defended by Hennessey. On the 23d March, 1864, the defendants entered into an agreement, of which the following is a copy:

Memorandum of an agreement made by and between Angus McDonald of the city of Brooklyn, party of the first part, and John D. Hennessey, carpenter, doing business at No. 141 Water street, in the city of New York, party of the second part, witnesseth:

That the said parties do hereby enter jointly in the business of getting white oak ship knees, white oak and pine timber, and black walnut in Canada, and bringing the same to market in the city of New York, during the season of navigation of the current year, and making sale and delivery of same at the Brooklyn navy yard or elsewhere, of which the conditions are as follows:

First. That the party of the first part shall personally superintend the purchase of said timber, etc., in Canada, attend the forwarding thereof to New York, and, if necessary, the delivery of same, and the collection of the payments therefor.

Second. That the party of the second part hereby agrees to furnish the sum of $800, federal currency, toward the commencement and prosecution of said business, namely, $400 to be paid into the hands of the party of the first part, on or before the 31st day of March instant, and the remaining $400 to be likewise paid into the hands of the said party during the month of April next.

Third. It is fully understood and hereby agreed upon, that the said party of the second part hereby incurs no further risk, nor assumes any responsibility whatsoever, than the said sum of $800 aforesaid. And that in consideration thereof, he the said party of the second part shall be paid one-fourth part

of the net profits accruing from the said business, as his full and lawful share.

Fourth. That as soon as practicable after the sale and delivery of said timber, and the net proceeds thereof are ascertained, then the portion due and payable to the second party shall forthwith be paid him.

Fifth. That the party of the first part is hereby empowered to arrange and negotiate with such parties as may be necessary, to accept drafts and pay expenses on said timber, and give such party or parties security or lien on such timber, and even if necessary give an interest in the business in New York to such parties. But it is understood that such interest shall not interfere with the interest and share of the party of the second part.

It is furthermore agreed that the fourth article above named is intended to mean every lot or parcel of timber sold and delivered the proceeds thereof shall be paid over.

To the due fulfillment and observance of which the parties bind themselves, their heirs and assigns.

Done at New York this 23d day of March, 1864.

ANGUS McDONALD. [L. S.]<br>JOHN D. HENNESSEY. [L. S.]

McDonald went to Canada in pursuance of the agreement, gave the bill to the Ontario Bank and that bank discounted it for him. Its proceeds were paid by him for a cargo of oak timber, which was sent to New York under the arrangement with Hennessey. Counsel for Hennessey moved to dismiss the complaint as to him, which was denied and an exception taken.

The court thereupon directed a verdict for the plaintiff for the amount of the bill and interest, to which direction the defendant Hennessey excepted.

The jury rendered their verdict for the plaintiff for $4,366.40.

The defendant moved for a new trial on the minutes of the court, which was denied.

Judgment was thereupon entered for the plaintiff upon the verdict.

*Crook & Bergen* for the appellant. Only the parties to a draft can be sued in an action founded upon it. (*Allen* v. *Fosgate*, 11 How. P. R., 218; *De Rider* v. *Schermerhorn*, 10 Barb., 638; *Siffkin* v. *Walker*, 2 Camp., 308 per Lord ELLENBOROUGH; *Emly* v. *Lye*, 15 East., 10, 11; *Sylvester* v. *Smith*, 9 Mass. R., 121; Barbour on Parties, 117, 118, 120, 124; *Montgomery Co. Bank* v. *Albany City Bank*, 3 Seld., 459; *Brownell* v. *Winne*, 29 N. Y. R., 400; *Cookingham* v. *Lasher*, 38 Barb., 630; 1 Lord Raymond, 442; Metcalf on Contracts, 123 and cases cited; Coll. on Partnership, 264; *Ex parte Emly*, Rose Bank Cases, 61; *Cookingham* v. *Lasher*, 38 Barb., 630.) To make one a partner he must have an interest in the stock with the right of contract. (*Conklin* v. *Barton*, 43 Barb., 435; *Burckle* v. *Echart*, 1 Denio, 341, 442; Metcalf on Contracts, 117 and cases cited.) To constitute a partnership there must be a joint undertaking to share in the profits and loss. (*Pattison* v. *Blanchard*, 1 Seld., 186; *Post* v. *Kimberly*, 9 Johns., 470; *Conklin* v. *Barton*, 43 Barb., 435; *Merwin* v. *Playford*, 3 Robertson's Superior Ct. Rep., 702; *Mumford* v. *Nichol*, 20 John. R., 171; *Turner* v. *Bissell*, 14 Pick. R., 192, 195; Story on Partnership 69; *Rice* v. *Austin*, 17 Mass. R., 197, 206; *Loomis* v. *Marshal*, 12 Conn. R., 69; *Conklin* v. *Barton*, 43 Barb., 435; *Sampson* v. *Feltz*, 1 McCord Ch. R., 218; *Chase* v. *Barrett*, 4 Paige, 148; *Bostwick* v. *Champion*, 18 Wend., 175.) Where one receives a share of the profits of a business as a compensation for services or for loans, it is not a partnership. (*Burckle* v. *Echart*, 1 Denio, 341, 342, per BRONSON, Ch. J; *Vanderburgh* v. *Hull*, etc., 20 Wend., 70; *Ross* v. *Drinker*, 2 Hall's N. Y. Sup. C. R., 415; *Miller* v. *Bartlett*, 15 Sergt. & Rawle., 137; *Murray* v. *Whitney*, 10 Johns., 226; *Rice* v. *Austin*, 17 Mass. R., 197.) Where there is a stipulation that A. shall appear as a partner, but shall be liable to no loss, he is not liable to those having knowledge of the stipulation. (*Alderson* v. *Clay*, 1 Camp., 404; *Minuet* v. *Winney*, 1 Bro. P. Cas., 489; *Ensign* v. *Wands*, 1 John. Cas., 171; *Livingston* v. *Rosevelt*, 4 John. R., 251; *Grom* v. *Cadwell*, 5 Cow., 489;

*Boardman* v. *Gore*, 15 Mass. R., 331 ; *Bailey* v. *Clark*, 6 Pick. R., 372 ; Coll. on Part., 56 ; Story on Part., 65, 69 ; id., 255, 3 Kent Com. 7th ed., 25, note *a;* 10 East., 264.) This was not a loan to a partnership, but a discount of McDonald's individual draft.     (See *Emly* v. *Lye*, 15 East., 10, 11 ; Doug., 654 note ; *Ex parte Shuttleworth*, 3 Ves., Jr., 368 ; *Ex parte Blackburn*, 10 Ves., Jr., 204 ; 1 Lord Ray, 442 ; *U. S.* v. *Astly et al.*, 3 Wash. C. C. R., 508 ; 9 John. R., 310 ; *National Bank* v. *Ingraham*, 58 Barb., 290.)     Where one partner borrows and gives his own paper it does not become a partnership debt by being applied to partnership purposes. (*Bevan* v. *Lewis*, 1 Sim. R., 376 ; *Siffkin* v. *Walker*, 2 Camp., 308 ; *Emly* v. *Lye*, 15 East. R., 10, 11 ; *Loyd* v. *Freshfield*, 2 Car. & Payne, 325 ; *Van Reimsdyke* v. *Kane*, 1 Gall. R., 630 ; *Riply* v. *Kingsbury*, 1 Day's R.,150; *Wiggins* v. *Hammond*, 1 Mo. R., 121 ; *Breckinridge* v. *Schreeve*, 4 Dana R., 378 ; Coll. on Part., 214 ; 3 Kent, Com., 7th ed., 43 ; *Lickie* v. *Scott et al.*, 10 La. R., 416 ; *Talmadge* v. *Penoyer*, 35 Barb., 120 ; *Turner* v. *Jaycot*, 40 N. Y. [1 Hand], 471 ; *Jaques* v. *Marquand*, 6 Cow., 497 ; *Wittaker* v. *Brown*, 16 Wend., 505 ; *Thorn* v. *Smith*, 21 Wend., 365 ; *Joyce* v. *Williams*, 14 Wend., 141 ; *U. S. Bank* v. *Winship*, 5 Peters, 574 ; *Leroy* v. *Johnson*, 1 Peters, 186.)     Where one of the parties is unknown and the loan is made on the credit of the others, the transaction only binds the latter. (*Miller* v. *Manice*, 6 Hill, 114 ; *Irving* v. *Conkling*, 36 Barb., 64.)

*Starr & Ruggles* for the respondent.     The contract between the defendants was a contract of partnership. (Collyer on Part., §§ 10–40 *et seq.* ; Story on id., §§ 33–34 *et seq.* ; *Grace* v. *Smith*, 2 W. Black., 998–1000 ; *Winship* v. *Bank U. S.*, 5 Peters, 457 ; *Ex parte* Hamper, 17 Vesey, 404 ; *Chase* v. *Barrett*, 4 Paige, 148 ; *Dobb* v. *Halsey*, 16 Johns., 40 ; *Champion* v. *Bostwick*, 18 Wend., 175 ;     Collyer on Part., 38 ; cases above cited.)     The draft was drawn to obtain money for the partnership and proceeds expended for its benefit; this made the draft a partnership obligation. (*Winship* v. *Bk.*,

*supra; Davis* v. *Allen*, 3 N. Y., 171.) That the plaintiff may have been ignorant of Hennessey's interest, does not affect the question of liability. (Story on Part. §§ 80, 138, 139 ; Collyer, id., § 537; *Kelley* v. *Hurlbut*, 5 Cow., 535.)

LEONARD, C. The agreement between the defendants, of March 23d, 1864, constituted a copartnership. There was a community of profit and loss. The limitation of the extent of the loss to be borne by Hennessy to the sum of $800, holds good against his partner McDonald, but it no more limits his liability on partnership contracts, as to third parties, than does the limitation of his interest in the profits of the business to twenty-five per cent. (Collyer on Part., §§ 16, 17, 18.) Many cases might be cited, including those referred to by the counsel for defendant, but they leave the rule as stated invulnerable. Nor does the fact that the defendant Hennessy was not known to the plaintiff as a partner affect his liability.

So far as it appears from the evidence, no one was known to the plaintiff as a contracting party, but the defendant McDonald. The copartnership and its business had the benefit of the money of the plaintiff. Although the fact does not appear to have been disclosed to plaintiff, the discount was obtained for and applied to the use of the copartnership, and the articles authorized McDonald to contract just such a liability for the business. He was " authorized to negotiate and arrange with parties to accept drafts and pay expenses," and give security on the timber. This language clearly contemplates that drafts were to be drawn by McDonald, who was to assume the management of the business. I think, in contemplation of law, he acted under and pursuant to this authority, when he applied for and obtained the discount of his bill on Newman, and in applying its proceeds to the business of the partnership. He made no declaration that he applied for the discount on his private account, and the use made by him of the proceeds indicates that it was not so in fact. It was not necessary

that the bank should know, at the time of the discount, that the money was obtained for copartnership use, in order to bind both of the defendants for its repayment. (Collyer on Part., § 537.)

The rule appears to be that the firm are liable when one member borrows, not expressly on his individual credit, and it is shown that the money was borrowed for and appropriated to the use of the firm. (*Church* v. *Sparrow*, 5 Wend. R., 223.)

It did not appear that McDonald was engaged in any other business on his own account, and this was considered as an important fact in an analogous case. (*Bank of Rochester* v. *Monteath*, 1 Denio R., 402, 405.)

Certain cases were relied on and cited in the opinion of the learned judge below, who dissented from the majority of the court, which are not in fact analogous, in the view which I have taken of the facts of this case. In *Jacques v. Marquand* (5 Cow., 497), it is said that where one partner borrows money on his individual credit and afterward applies it to the use of the firm, the lender does not thereby become a creditor of the firm. That case differs from the present, in the fact that Marquand did not act on behalf of his firm (p. 501), and Marquand was there seeking to charge his firm, and to defeat an action brought to charge him individually. The case of *Tallmadge* v. *Penoyer* (35 Barb., 120) was also referred to in the dissenting opinion. It was there held that money borrowed for the individual use of one, and afterward used for the firm of which he was a member, without his partner's consent, did not make the partner liable. The fault in the case of the defendant Hennessy is that his partner was acting for the partnership, and by his authority. This fact distinguishes this case from those authorities which have been relied on by the counsel for the appellant. For these reasons I am of the opinion that it was well held by the majority of the court below that the bill was drawn by the firm, although the name of McDonald only appeared.

It must be conceded that the agreement contemplates that

no liability shall be created to bind Hennessy beyond the sum which he had contributed as capital, but it has not been framed so as to secure that result, except as between the parties. The right to a share of the profits as such, and not as a measure of compensation equal to the share stipulated for, overrides a construction of the agreement as to third parties which would produce such a result as the agreement is supposed to have contemplated.

It may be objected that the question whether McDonald was acting for himself individually in obtaining the discount ought to have been submitted to the jury. I think, however, the objection would have been untenable, as the facts indicate conclusively that he was acting in the interest of himself and Hennessy jointly. But if I am not right in this, the right to claim a new trial on this ground has been lost by the omission to request the judge at the trial to submit that or any other question to the jury.

In my opinion, the plaintiff was authorized to recover against both the defendants as for money had and received, without any reference to their liabitity as the drawers of the bill. The complaint contains the requisite allegations that the money was received and applied to the copartnership business of the defendants, and the proof sustains the allegations. (*Pentz* v. *Stanton,* 10 Wend., 271, 278 ; *Allen* v. *Coit,* 6 Hill, 318.) The money of the plaintiff's bank was obtained by a party authorized by the partnership for that purpose to act in his own name, and it was applied legitimately in their business. The judgment is right and should be affirmed, with costs.

EARL, C. The agreement executed by the defendants, March 23, 1864, made them partners. It provides for a joint business, to which McDonald was to give his personal attention, and Hennessy was to furnish $800. This $800 was not a loan, but was to be furnished as capital, as no provision is made for its repayment. Hennessy, however, was to incur no further risk nor assume any further responsibility than the

$800. This was placed in peril and might be lost, and if the loss should be greater than the $800, McDonald was, as between him and Hennessy, to bear it. If there was any net profit, Hennessy was to have one-quarter of it. It thus appears that Hennessy was to share in the profits of the business as profits, not as a compensation for wages he was to earn, or interest on money loaned to McDonald, but in consideration of his share of capital invested and imperiled in the joint business. Whatever the intention of the parties may have been, this, as to third persons, made him a partner. Here, within the meaning of the authorities, was a communion of profits, and hence a partnership. (Collyer on Part., § 18; Lindley on Part., 17; *Winship* v. *Bank of the United States*, 5 Peters, 529, 560; *Champion* v. *Bostwick*, 18 Wend., 175.) It matters not that McDonald was to assume all the risk and bear all the loss beyond the $800. "A man, on entering a partnership, may stipulate to be free from all liability for loss, and such stipulation will hold good as between himself and his co-contractor. In such case he will still be a partner, enjoying, in addition to the advantages of partnership, the indemnity offered him by his companion." (Collyer on Part., § 18.)

But here was also a community of loss. Hennessy's $800 was put in peril, and to that extent he was liable to be involved in loss with his copartner. Hence, even if it were necessary, which is denied (*Manhattan Brass & Man. Co.* v. *Sears*, 45 N. Y., 797), that there should be a community of loss as well as of profit to constitute a partnership, that condition exists here. Hence I have no hesitation in holding that the defendants were partners, as between themselves, and for a much stronger reason as to third parties.

The next question is, whether Hennessy is liable upon the draft in suit. The agreement did not provide for a partnership name. But as McDonald alone was to give personal attention to the business, and as Hennessy was to incur no risk and assume no responsibility, no firm name being expressly adopted in the agreement, it is fair to infer that the firm business was

to be done in the name of McDonald. He was authorized to draw the drafts, to raise money for the business. Hence, McDonald's name was to all intents the firm name, and drafts drawn in that name to raise money for the use of the firm must bind the firm. ( *Winship* v. *Bank of United States* [*supra*] ; Story on Part., § 139.)

This draft was drawn and the money all used in the firm business, and hence both members of the firm were bound by it, as if they had both signed it.

While the complaint is technically defective in not directly alleging that the draft was drawn in the firm name, or that it was the draft of the firm, yet taking the whole complaint, together with the fact that both partners are joined as defendants, there is enough to show that the cause of action set forth is based upon the draft, as a firm draft, and that the liability sought to be enforced is the firm liability on the draft. As no objection was taken to the complaint by demurrer, and the defendants could not have been misled, the complaint should, at this stage of the case, be held sufficient in substance.

The judgment should be affirmed with costs.

GRAY, C. (dissenting). My examination of this case has brought me to the conclusion that the plaintiff ought not to recover against the defendant Hennessy. I agree that if, by any act of his, he had suffered himself to be held out to the plaintiff, or the public, as a partner with McDonald, in the enterprise of getting out and purchasing lumber in Canada to be marketed in Brooklyn or elsewhere, or if, by the contract between them, he was to share in the profits of the enterprise, and no limitation was made as to losses, or restriction as to the right of McDonald to expose him to loss by involving him in liabilities, he would be liable to share in all losses sustained by McDonald. The case is without evidence to support a recovery upon either ground stated ; and I do not understand that the right to recover is placed upon either of them, but upon an agreement between the defendants, which, so far as the evidence shows, was never made public

or known only to themselves. The plaintiff's status is, there-fore, no better (if it is as good) than it would have been if it had appeared on the trial that, at the time of the discount of the draft, the agreement was produced and read by the plain-tiff, who was thereby notified of the rights of the parties as between themselves, and from it have learned that near the close of March, 1864, the parties jointly engaged themselves in the business of getting ship knees and other timber in Canada during the navigation season of that year, and mak-ing sale of it at Brooklyn navy yard or elsewhere. That McDonald was to give his personal attention to the business, and to enable him to commence and prosecute it. Hennessy was to and did furnish to him the sum of $800, in considera-tion of which Hennessy was to receive one-fourth of the net profits of the enterprise, and, to enable McDonald to provide himself with further means with which to prosecute the business, he was authorized to arrange with other parties to accept drafts, and give, as security therefor, a lien on the lumber or an interest in the business; but to guard Hennessy against the hazard of further loss than that incurred by risk-ing the $800 advanced by him to the chance of loss, it was expressly provided that he should not incur a further risk than the loss of the advance thus made, or assume any responsibility whatever. This instrument, therefore, as between the parties to it, did not confer upon McDonald the right to involve Hennessy in any risk beyond the $800, or place him in a condition where he would be compelled to assume any liability whatever, and, as a necessary conse-quence, a party who should discount McDonald's draft upon Hennessy, whether in ignorance of an agreement creating joint or partnership relation between them, or with notice that Hennessy's risk was thus limited, and that McDonald was not authorized to place him in a condition compelling him to assume a liability, could not compel him to honor or pay the draft.

For affirmance, LEONARD, EARL and HUNT, CC.

For reversal, GRAY, C.; LOTT, Ch. C., not sitting.

Judgment affirmed.