S. L. Seldex, J.
It is not sought by this appeal to disturb the finding of the judge at special term, in respect to the state of accounts between the plaintiff and the defendant’s intestate, so ■ far as those accounts have been properly investigated. What is claimed on the part of the appellants is:
First. That the deed of the forty-five lots was, in all respects *213 and to all intents, just, fair and legal, and should have been adjudged to be valid.
Second. That if it be considered that the relations between the parties were such as to affect 'the validity of the deed, it was, nevertheless, erroneous to set it aside absolutely, without compensation to the intestate for his services as agent and general manager of the estate of the plaintiff for many years, and without any inquiry as to the value of those services.
The superior court, notwithstanding the premises conveyed by the deed in question constituted part of the subject matter of the suits which the intestate had conducted, did not proceed, in setting aside the deed, in any degree upon the law of champerty or maintenance, but upon the general rule that transactions between attorney and client, by which the former is benefited, will be set aside, unless clearly shown by the attorney to have been either just and fair, or purely voluntary on the part of the client.
It is insisted by the appellant’s counsel that this rule does not- apply, as the relation of attorney and client had ceased long before the giving of the deed; the last of the suits in which the intestate was engaged having finally terminated in April, 1855, while the deed was not executed until January,
1856. The rule, however, is not so limited as the counsel seem to suppose. It applies to every relation which pre-supposes an ascendant or controlling influence by one party on the mind of the other; such, for instance, as that of guardian and ward, trustees and cestui qui trust, &c. The foundation of the rule is the influence arising from the relation. So long, therefore, as the influence "exists, the rule of course applies.
It is apparent that in many cases the influence acquired during the existence of the relation may extend more or less after the period of its termination. The authorities shSw that when this is the case, the transaction will be scrutinized with the same jealousy as if the relation had continued. In the language of Lord Eldor, in Wood v. Downes, 18 Ves. 119:
“It is not denied in any case that if the relation had completely ceased — if the influence can be rationally supposed also to cease — a client may be generous to his attorney or counsel as to any other person, but it must go so far.”
*214 It was found by the judge before whom the case was tried, that the deed “ was executed under the influence of the confidential relations, and of the relation of attorney and client, theretofore subsisting between the said plaintiff and the said James R. Ring.”
Under this finding, the position of the case is precisely the same as if the deed had been given before the litigation was ended. It was not executed as a gift, but, as the judge has found, as a compensation for professional and other services previously rendered. In such cases the courts will not set aside a transaction, if it appears clearly to have been in all respects just and fair, or if the action of the client seems to have been entirely voluntary — that is, without any disturbing influence growing out of the relation. But such an influence is uniformly suspected. It is not necessary for the client to establish it by proof aliunde. The presumption is in his favor, since it was not essential, in order to justify the court in setting aside the deed, that the judge should find, as an affirmative fact, that it was obtained by fraud or undue influence. The law presumes such influence from the relation which is found substantially to have existed between the parties. This presumption would, no doubt, be repelled in a case where the court could see, from the character and conduct of the parties, that there was no reason to impute to the attorney any undue ascendancy over the mind of his client. But that can hardly be said in the present case. The action, of the court, therefore, in setting aside the deed, after having found as a fact that it was executed under the influence of the.previous relation, was in accordance with the principles which have been generally applied to such transactions.
It does not follow, however, that the judgment is to be in all respects affirmed. Upon general principles of equity, a deed or instrument of any sort given, in such a case, as a compensation for services rendered, will be allowed to stand as security for what is actually due.
It is contended, on the part of the appellants, that the intestate was entitled to a compensation for his services as the general managing agent of the plaintiff for a long period, and that *215 no allowance whatever is made by the judgment of the superior court for those services.
The judge has found that, from the year 1844 to the year 1850, the intestate took charge of all the affairs and property of the said plaintiff, paid his bills, managed his property, and supplied him with money from time to time. Of course, thus considering the circumstances and the risk incurred, the intestate was entitled to a compensation, and even a liberal compensation for services of so general and handsome a nature. It is said that he was negligent in making his entries, and that the account of his receipts and expenditures were left in a loose and disorderly manner. This was, no doubt, highly censurable, and should subject him to unfavorable presumptions and influences in taking the account. But could this inattention to details cancel the obligations of the plaintiff to reward him for years of devotion to the plaintiff’s interests, and for the personal sacrifice made at a time when the plaintiff’s means of remuneration were entirely uncertain ?
I think not. bio actual fraud is imputed to the intestate by the finding of the judge; and it is expressly found that he is charged in the accounts with the amounts and sums received by him “ from all sources ” on account of the plaintiff. I can see, therefore, no just principle upon which he or his representatives can be denied all compensation for his services. If, then, it should clearly appear, upon an examination of the case, that the only allowance made to the intestate was for his professional services as attorney and counsel, and that nothing has., been allowed for his onerous and continued services as agent and manager of the plaintiff’s affairs, the judgment should be opened in order that a proper provision in that respect may be made.
It is said by the respondent’s counsel that the allowance of twelve thousand dollars made by the supreme court, was intended not merely as a compensation for the costs, counsel fees, and professional services of the intestate, but for all other services and charges whatsoever.
If we look at the finding of the judge below, this may be a just inference from the language used. That language is, “ that twelve thousand dollars is a just and proper allowance and compensation for the said services of the said James J. *216 Ring, hereinbefore mentioned, and for all costs, counsel fees, and other just charges that he was entitled to,” &c. This language is comprehensive enough to include the services of Mr. Ring as agent; hut rightly to interpret it, it became necessary to look into the previous history of the case.
This sum of twelve thousand dollars was taken from the report of the referee, appointed to take and state an account between the parties. By the order of the reference, the referee was directed to “ take an account of all costs, counsel fees, and oilier just charges of the said James J. Ring against the plaintiff, for professional services rendered on his account; and to inquire and report what sum .would be a just and proper allowance and compensation for such services.” The order is entirely silent as to any compensation for services, as agent or general manager for the plaintiff.
The inquiry is strictly limited to charges for professional services.
The language of the referee’s report is equally definite; he says he has taken an account of “ all the costs, counsel fees, and other just charges of James J. Ring against the said plaintiff, for professional services rendered on his account; and that $12,000 is a just and proper allowance and compensation for such service.”
There can be no pretense, therefore, that anything was actually included in this sum of twelve thousand dollars as a compensation for -services, other than professional.
. This report was confirmed; of course, then, the inference is, when the judge adopts this sum of twelve thousand dollars, that he does not arrive at ic from any original investigation of his own, but takes it from the report of the referee, especially as the finding of the judge is in the precise language of the order of reference, and of the report, so far as it goes. It omits, it is true, the phrase " for professional services.” How, whether this omission was accidental, as I should be led to infer, or was intentional, the result must be the same.
As the referee expressly found that the twelve thousand dollars was a just compensation for professional services alone, and as this report was confirmed, it is clear that no allowance has in fact been made for any other services.
*217 If, then, the omission to direct any inquiry on the subject of services, other than professional, or to provide a compensation for such services, in the final judgment, occurred through inadvertence, it should of course be corrected. But if, on the other hand, the judge came to the conclusion that the intestate was not entitled io compensation for such services, and therefore omitted to make any provision on the subject, this, in my judgment, was clearly erroneous. Fo such conclusion could legitimately follow from the facts found by him.
For twelve years the intestate not only took the entire charge of the defendant’s affairs, even to the most minute daily expenditures, but made very considerable advances from his own means for the support of the plaintiff and his family, at a period too, when it was entirely uncertain whether the plaintiff would ever be able to reimburse him.
The intestate has been deprived by the judgment of the court of all extra compensations, through the sense of justice, or the generosity of the plaintiff; and there seems to be no just reason why he or his representatives should not receive a reasonable allowance for his twelve years’ service.
The judgment of the superior court should be opened, and the proceedings should be remitted, in order that inquiry may be made as to the services of the intestate, other than professional ; and the deed should be permitted to stand, until the inquiry is made, and the accounts are finally adjusted, with costs, subject to the award of the court, upon the final determination of the case.
James, J.
The judgment below was based on the sole ground that the deed, settlement, and lease were made, execul^d and delivered by the plaintiff, under the influence of the confidential relations existing between the parties, arising from their former relations of attorney and client. Such is the fair interpretation of the language in the finding of the judge at special term. The word “ theretofore ” in the finding can only have force by such construction: and this interpretation is sanctioned by the fact that the actual relation of attorney ana client had ceased some nine months previous to the execution of the deed.
*218 It is a rule of equity that while the relations of attorney and client subsist in their full vigor, the latter shall not derive any benefit to himself from, the contracts or bounty or other negotiations of the former (Wood v. Downs, 18 Vesey, 126), and this doctrine is not limited to t"he rights or property in controversy, but may extend to the other contracts and transactions disconnected therefrom, when from the attendant circumstances there is reason to presume that the attorney possessed some marked influence, ascendancy or other advantage over his client in respect to them. Edwards v. Meyrick, 2 Hare, 60-68. It is not necessary in such case to establish that there has been fraud or imposition on the client, nor on the other hand is the transaction necessarily void, ipso facto; but the burden of establishing its fairness is thrown upon the attorney. The reason of the rule is that the relation gives rise to great confidence between the parties, enables the attorney to exercise a strong influence over the actions of his client, puts it in his power to avail himself of his necessities, his good nature, liberality and credulity; and hence the law not only watches over all the transactions of parties in this predicament, but often interposes to declare void transactions which, between other parties, would be held unobjectionable. But where the relation of attorney and client is completely dissolved, and the parties no longer under the antecedent influence, this rule ceases, and they stand upon the rights and duties common to all other persons. Gibson v. Jeyes, 6 Vesey, 277. It was shown in this case that the relation of attorney and client had ceased, and the confidential relations arising therefrom were broken off and dissolved some time before the deed in question was executed and delivered, and therefore there is no ground upon which the foregoing equity rule can be applied in this case.
The plaintiff was of mature age, of sound mind, and sufficient capacity to fully understand and to appreciate all his rights; and the voluntary execution and delivery of the deed in question, as a compensation for Ring’s professional and other services, cannot, upon the facts established in this case, be attributed to the influence of the confidential relation theretofore existing between them, but rather to the performance of *219 a previous agreement or understanding that Ring, if successful, should participate in a share of the profit of the litigation.
It was insisted that the foregoing equity rule had been abrogated by the Code, § 303. Such, however, is not the effect of the statute. Its object and purpose were to place the lawyer upon the same footing as other persons, free to make his engagements with his clients as they should agree; and, although extremely broad in language, it went no farther. It removed the restraint imposed by the statute of champerty and maintenance, permits contracts for services to be made between attorney and client before or on the creation of the professional relation, and payable out of the subject matter of the litigation, or upon a division thereof, when recovered or otherwise, hut in no wise affects the equity rule as to subsequent actions created or performed under the influence of that relation.
Ho appeal was taken from that part of the judgment, which fixed the intestate’s indebtedness on the accounts at thirty-six thousand seven hundred and ninety-nine dollars and fifty-five cents, and from the finding of the referee that Ring’s professional services were worth but twelve thousand dollars, and therefore we,make no inquiry as to those matters.
The appeal was from that portion of the judgment which declared the deed of the forty-five lots void. For reasons herein given, we think that judgment erroneous, and should he reversed. The lots at the time of conveyance were valued at forty-five thousand dollars, and that was the estimate which the plaintiff himself placed upon the professional and other services of said intestate. That Ring rendered services, other than professional, of great value .to the plaintiff^ was clearly shown, and those services were not included in the estimate of the referee. We therefore think it proper that the plaintiff’s own estimate of Ring’s services should stand, and that the judgment of the court below should be reversed as to the forty-five lots;. said lots, however, to he made subject to the payment of the balance found due on the accounting, with interest, but without costs to either party in this court or the court below.
Judgment reversed, and the proceedings remitted for further accounting as to services other than professional.