CAREY v. SMITH et al.

(Supreme Court, Appellate Division, Second Department.　May 8, 1896.)

VENDOR AND PURCHASER—FRAUDULENT REPRESENTATIONS BY PURCHASER.

A purchaser, after taking possession under a contract of purchase, refused to complete the purchase because of alleged false representations by the vendor that the cellar was dry, whereas it was subject to flooding by water backing up in the sewer, and she sued to recover the money paid on the contract. Her agent, who negotiated with the vendor, testified that he asked if the cellar of the premises was dry, and called attention to marks indicating dampness; that the vendor answered that the cellar was positively dry, that other people had lived there, and that he had never heard any complaint, and stated that the marks indicating dampness were caused by cement being placed in different patches, and drying at different times. The vendor testified that he only said that the cellar was dry as far as he knew, and that he heard no complaints from his tenants about its dampness, and that he did not say that the cellar was positively dry. Other witnesses testified that the cellar had been flooded on previous occasions; that the water had been pumped out by the vendor's plumbers; and that a gate had been placed in the pipe connecting the house with the sewer for the purpose of preventing water from backing up. *Held,* that the evidence showed that the vendor knowingly made false representations as to the condition of the premises.

Appeal from judgment on report of referee.

Action by Adelaide Carey against James H. Smith and Mary E. T. Smith to recover money paid by plaintiff to defendants on a contract for the purchase by her of a house from defendants. There was a judgment in favor of defendants, and plaintiff appeals. Reversed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

George Putnam Smith, for appellant.
Michael J. Tierney, for respondents.

CULLEN, J.　The plaintiff entered into a contract with the defendants whereby the defendants were to convey to her a house and lot in New Rochelle for the sum of $4,500, $250 of which the plaintiff paid on the execution of the contract, and the remainder whereof she agreed to pay on the delivery of the deed. The plaintiff was given possession of the premises prior to the time prescribed for passing the title. After occupying the house for some 10 days the cellar was flooded from the sewer. Thereupon the plaintiff removed from the premises. She claimed to rescind the contract on the ground that the contract was induced by fraudulent representations as to the condition of the cellar, and brought this action to recover the amount paid by her in advance and her expenses in the examination of the title. The referee found in favor of the defendants, that they did not falsely represent the condition of the cellar of the dwelling house.

The rule is settled that, to justify the appellate court in reversing the decision of a trial court or a referee on the facts, it is not sufficient that the appellate court, if it had acted in the case in the first instance, would have reached another conclusion, but it must affirmatively appear that the decision of the trial court on the question of

fact was clearly erroneous. Judged by even this strict test, we are of opinion that the report of the referee should not be sustained. The fraudulent representation alleged to have been made by the defendants as an inducement for the contract was that the cellar of the dwelling house was dry, and that there had been no complaint made of its condition by any tenant. As we construe the answer of the defendants, the making of the representation is not denied, but only its falsity. Apart, however, from the question of the pleadings, we think that this representation was substantially made, and also that it was false.

The negotiations between the parties were carried on between the husband of the plaintiff and the defendant James H. Smith. It is conceded that these two parties discussed the condition of the cellar, and that the plaintiff's husband did make inquiry as to its being dry, and called attention to marks or patches indicating dampness. He testified that he said to the defendant James H. Smith that his boy had been sick, and he was particularly anxious to have a house with a dry cellar; that the defendant answered that the cellar was positively dry, that other people had lived in the house, and had children there, and that he had never heard any complaints from it; that thereupon plaintiff's husband called attention to two spots on the foundation or cellar flooring, and said they looked as if the cellar was damp; that the defendant answered that that was caused by the cement being placed in different patches, and one drying before the other. The testimony of the defendant James H. Smith is that the plaintiff's husband asked him about the cellar, "and I told him it was dry, as far as I knew about it; that I had lived in the house five months myself, and had rented it every year after that; that I saw nothing that would lead me to believe that it was damp; and that I had had no complaints from my tenants about its dampness. I told Mr. Carey that. * * * I did not say that the cellar was positively dry; only as far as I knew the cellar."

We think the probabilities are in favor of the truth of the story told by the plaintiff's husband. As it is undisputed that the dryness of the cellar was a subject of inquiry by him, it seems hardly probable, especially after the appearance of the suspicious water marks, that he would be satisfied with anything less than the positive statement as to the condition of the cellar. But, even taking the defendant's narrative of the conversation, we think the statements made by him were not in accordance with the facts. It was shown by the evidence of a tenant and his wife, who had been in occupation of the house shortly before the time of the contract, that there had been several occasions on which the cellar was flooded from one cause or another. It was established, by the plumbers who did the work, that on these occasions the water had been pumped out at the expense of the defendants, and not at that of the tenant. The defendant James H. Smith testifies that he had no knowledge of the presence of water in the cellar, except on one occasion. The tenant, however, sent notice to the defendant of the fact, and, though there was no direct evidence that such notice reached the defendant, still it appears that, after sending notice, the defendants' plumbers came

to the premises and pumped the water out. It further appears that the location and grade of the cellar are such that there is a liability, when the tide is high, that the water may be forced back through the sewer and the house connection into the cellar, and this is what actually occurred when the plaintiff removed from the premises. To guard against this danger the defendants had put a gate in the house connection, which, it was believed, would prevent the backward flow of water. The fact of the use of this appliance would tend to indicate knowledge on the part of the defendants of the liability of the cellar to floods. Taking the whole evidence, we think it clear that the defendants must have known, at the time of the negotiations for the sale of the house to the plaintiff, that the cellar had been at times flooded, and that there still existed liability of a recurrence of the evil.

The judgment appealed from should be reversed on the questions of fact and law, and a new trial granted before another referee, to be appointed at special term; costs to abide the event. All concur.