HANNAH JANE MARDEN, Respondent, *v.* JOHN F. DORTHY and HIRAM
L. BARKER, Appellants, Impleaded with Others.  No. 1.

*Deed obtained by fraud — proof thereof, required — duty of an attorney in dealing
with his client — rights of a mortgagee in good faith — reversal on the facts.*

Where, in an action brought to have a deed adjudged to be void on the ground
of fraud, the statutory presumption of truth in favor of a certificate of
acknowledgment, and the presumption against the commission of a crime and
a deliberate violation of duty by a public officer, are confirmed by the positive
testimony of the commissioner who took the acknowledgment, and are sup-
ported by all the attendant circumstances, inferences and probabilities of the
case in favor of the due execution of the deed, this evidence ought not to be
deemed overcome by the bare failure of memory or the positive denial of the
plaintiff, a party in interest, relative to the signing of the deed.

An attorney who deals with his client must show that the client fully understood
the nature of the transaction; and when he is benefited by the transaction the
burden is imposed upon him of showing that a transfer of property made to
him by his client was the voluntary, intelligent act of the client, and that the
client fully understood its nature and effect.

Where, in such a transaction, the attorney is guilty of a fraud upon his client,
the transfer will not be permitted to stand even as a security for moneys
advanced by the attorney for the client.

A mortgage taken back by the attorney on a conveyance of the property by him,
which he has assigned to a third party as collateral security for advances, will
be sustained in favor of the third person to the extent of the money advanced
on the faith thereof.

The rules governing the action of the Appellate Division, in reversing a judg-
ment on the facts, considered.

APPEAL by the defendants, John F. Dorthy and another, from a
judgment of the Supreme Court in favor of the plaintiff, entered in
the office of the clerk of the county of Monroe on the 4th day of
June, 1896, upon the decision of the court rendered after a trial at the
Monroe Equity Term. (See *Marden* v. *Dorthy*, No. 2, *post*, p. 188.)

*John Van Voorhis*, for the appellant Dorthy.

*David Hays*, for the appellant Barker.

*Theodore Bacon*, for the respondent.

GREEN, J. :

This action was brought in June, 1895, to have adjudged as fraudu-
lent and void a certain deed of premises situated in Rochester, pur-

porting to have been executed by the plaintiff to the defendant Dorthy, and also certain other conveyances from Dorthy to defendant Thompson and from the latter to the defendant Nevin; also, a certain mortgage on the premises executed by Thompson to Dorthy and by him assigned to the defendant Barker. The first deed bears date February 13, 1892, and was recorded two days later. On September 21, 1894, Dorthy and wife conveyed to Thompson, who, on the same day, executed to Dorthy a mortgage thereon to secure the payment of $2,150. On the following day Thompson conveyed to Nevin. On November eighth Dorthy assigned to defendant Barker the bond and mortgage executed to him by Thompson as security for the payment of notes which Barker might indorse for him, upon the credit of which Barker afterwards advanced $847.11. It is not disputed that Barker took the assignment of the mortgage in good faith.

The defendants Thompson and Nevin suffered default and have allowed the complaint to be taken *pro confesso.*

The court found *inter alia* that the defendant Dorthy, a counselor at law, was, before and at the time of the pretended execution of the deed to him and for a long time subsequent thereto, the plaintiff's trusted counselor and adviser in regard to her property and business; that Dorthy was the husband of the plaintiff's daughter, and at the time aforesaid he came gradually to take charge of the management and direction of the plaintiff's affairs; that the plaintiff is a widow, her husband having died in the year 1891, and she is altogether without experience or knowledge of business affairs, especially in regard to the business of real estate; that the plaintiff never acknowledged the execution of the deed in question, and that the certificate of acknowledgment was false and fictitious; that she never executed the deed, and, if she signed it, it was without knowledge of its contents, and through some deception practiced upon her by Dorthy.

Counsel for the plaintiff correctly states that some of the general facts in regard to the character and relations of some of the parties are identical with those already presented to this court in the action brought by the plaintiff against the Dorthys, the Monroe County Savings Bank and Barker (*post*, p. 188), and which has been disposed

of at this term; he concedes, however, that most of the facts and circumstances now presented are entirely peculiar to the present case. In the former action the notary testified in favor of the plaintiff and against the fact of acknowledgment. He testified, among other things, in a positive manner, that he never took that acknowledgment at her house, as it was stated by Dorthy. The defendant failed to call the pretended grantee, Ella M. Dorthy, to contradict the *prima facie* case made by the plaintiff; she was a party to the suit and an important witness, and "a weak case for the plaintiff is made strong when a witness who could contradict it is not called by the defendant." And in a case of the character therein presented by the evidence, a party seeking a new trial on the ground that the findings were against the weight of evidence, was required to explain the absence of a witness (a party) who could contradict the testimony of the opposing party when the fact in question — whether she had any previous knowledge of the deed — was a matter peculiarly within her own knowledge. Her omission to testify had a material bearing in respect to the execution, delivery and acceptance of the deed, and was a circumstance to be taken into consideration in determining the probability or improbability of the acknowledgment itself.

Dorthy attempted to establish as a consideration for that deed to his wife — which he said was to be kept concealed from her — his agreement to support and maintain the plaintiff during her lifetime. This may be answered in the language of the court in *Jackson ex dem. Tracy* v. *Hayner* (12 Johns. 474): "That witness says the old man declared at the time that Samuel was to maintain him; yet no security for such maintenance was given, and he parted with his property without it. This, of itself, renders the whole incredible."

There was no reason shown why the plaintiff should be willing to part with her homestead, worth about $15,000, in reliance upon the "security" of Dorthy's word, or for any other nominal consideration. Upon all the facts and circumstances there presented, and all fair and reasonable inferences and probabilities warranted thereby, the court very properly found that the plaintiff never intended to part with her title, and that she never executed, delivered or acknowledged that instrument.

But here the evidence produced on behalf of the defendants is of a different character, presenting material and substantial differences in the facts and circumstances.

We would have been well satisfied if the trial court had found in favor of the validity of the acknowledgment in protection of the rights of the defendant Barker, but having decided against the certificate and the testimony of the commissioner, who testified so clearly and positively to the taking of the acknowledgment, the question arises whether, in view of all the circumstances in evidence, the appellate court would be warranted in holding that the trial court has failed to give due and proper weight to the adverse evidence, in arriving at the conclusion that the acknowledgment is a forgery.

The appellate court will not set aside a decision of a referee as against the weight of evidence, even though it might have reached a different conclusion itself, unless the preponderance of evidence in favor of the appellant is so great that it can be said with a reasonable degree of certainty that the findings of the referee are erroneous. (*Burton Co.* v. *Cowan,* 80 Hun, 392 ; 150 N. Y. 583; *Sayles* v. *De Graff,* 82 Hun, 73, and cases cited ; *Carey* v. *Smith,* 5 App. Div. 505.)

The rule that when there is conflicting evidence, and when there is any evidence to sustain the finding, it is error to reverse the judgment, is not applicable in any case where the appellate court has a right to review the facts.   When such review is proper, it is the duty of the appellate court to pass upon the facts from the evidence; and in this respect the duty is different from what it is in reviewing a judgment entered upon the verdict of a jury.   In the latter case the right of reviewing the facts is not conferred, and to reverse upon the facts, there must be an absence of any evidence to sustain the verdict.   Proper deference should be awarded to the judgment of the referee in cases of serious doubt, upon conflicting evidence, especially when it is probable that the appearances of the witnesses, or their manner of testifying, was, or might have been, controlling in determining the questions ; but these cases are rare, and in general it is the duty of the appellate court to take the responsibility of examining the evidence and determining the facts for itself.   (*Godfrey* v. *Moser,* 66 N. Y. 250.)

But when there is evidence on both sides, and the case is balanced and the mind of the court has been called upon to weigh conflicting statements and inferences and decide upon the credibility of opposing witnesses, much weight must be accorded to the especial adaptation of the trial court to investigate and determine such questions. (*Baird* v. *Mayor, etc., of N. Y.*, 96 N. Y. 567, 577.)

In determining the weight of evidence it is proper to consider its quality, the interest of the witnesses in the issue of the trial and the compatibility and consistency of their several statements with the truth as it may appear from attendant circumstances. (*Schumacher* v. *Waring*, 7 Misc. Rep. 161.)

Now, after a critical examination and analysis of the evidence and a careful consideration of the same, it appears to the court, with a reasonable degree of certainty, that the finding of the court below as to the non-execution of the acknowledgment is contrary to the fair preponderance of the evidence.

In the consideration of the evidence we undoubtedly start with the presumption that the certificate is true. (*Albany Co. Savings Bank* v. *McCarty*, 149 N. Y. 71.)

The plaintiff testified, in the most explicit and positive way, that she never executed any deed of this property to Mr. Dorthy; that she never had any communication, direct or indirect, in regard to such a transfer; that she never acknowledged the execution of any paper purporting to be a transfer of the property to anybody, and being especially interrogated, she says, with reference to Nellie Young, whose name appears signed to the certificate of acknowledgment upon the deed, that this young woman was for some time stenographer for Mr. Dorthy, but declared that she never acknowledged before her the execution of any instrument whatever. She also stated that she never signed any paper, at the request of Dorthy, or of any other person, without reading it; that any paper she signed she knew the contents of. "I should say that that was my handwriting; I see it is written in green ink; *  *  * I will swear there was not a bottle of green ink in my house that I know of when Mr. and Mrs. Dorthy came to live with me"— which was a couple of weeks after the date of the deed. Again, on an adjourned day of the trial, she stated that, so far as she knew, she had no green ink in the house. After it had been established that

there was green ink in the house, both before and after the date of the deed, she admitted, on the last adjourned day of the trial, that there was now a bottle of green ink in the secretary in her house; she had forgotten about it. Dorthy testified to the fact of sending Nellie Young to plaintiff's house for the purpose of taking her acknowledgment, and that the deed was brought back with her signature upon it. At the conclusion of the testimony on April thirteenth defendants' counsel stated that they rested, with the exception of introducing the testimony of Mrs. Young, if she could be found; that they were ignorant of her whereabouts, and all efforts to find her had been futile. The trial was then postponed to April thirtieth, when she was produced. She was found in Scranton, Pennsylvania, and had left Rochester something over two years before. She corroborated Dorthy in respect to her receiving the deed from him to take to the plaintiff for execution, and the return of the same signed and acknowledged. She gave in a clear and explicit manner a very circumstantial account of the whole transaction. She said she read over the deed to the plaintiff, who also read or "looked it over," and signed it in the library, using the green ink from the bottle on the secretary or writing desk; that she then arose and the witness sat down in the same place, and with the same ink and the same pen subscribed her name to the certificate of acknowledgment. She also stated that she brought a seal with her and affixed it to the signature. "I went to the house and her daughter came to the door, and I asked for Mrs. Marden."

On cross-examination she was asked, "When Mrs. Dorthy let you into the house, and you inquired for Mrs. Marden, how long was it before she came?" She answered, "Mrs. Dorthy did not let me in. Miss Ida Marden let me in."

Now, if the witness were concocting a story, there was no reason or necessity for bringing into the case Ida, who might be produced to contradict her.

If plaintiff's counsel had asked for an adjournment, he would probably have been able to produce this witness, who, we assume, is on good terms with her mother, and has an "interest" in the property in the sense of an expected inheritance. But, as this testimony was wholly unexpected, and the able counsel was taken by surprise, no blame is imputable to him on that account.

There is inherent truth in the testimony of Mrs. Young that she had occasion to go to the plaintiff's house several times prior to Mr. Marden's death, in March, 1891.   Plaintiff says Mrs. Young was never in her house to her knowledge; but in view of the occasion and circumstances of those visits, it seems hardly probable that the visits of Mrs. Young were at the time unknown to the plaintiff.   It is possible she may have forgotten the circumstances after the lapse of five years.   The fact that both signatures were written with ink of the same color, and were apparently .made at about the same time, is a circumstance not to be overlooked or disregarded in weighing the probability of the truth of the commissioner's testimony. Mrs. Young and Dorthy say that there was no green ink in the office, and Dorthy and wife state that there was none at their house prior to their removal to plaintiff's house.   The fact that there was green ink there corroborates Mrs. Young on that point.   "The identity of the ink in the signatures was a circumstance of some weight, as it tended to show that she signed the deed at the place where the notary signed the acknowledgment."   (*Ford* v. *Osborne*, 45 Ohio, 5, 6.)

Since the deed from Blakeslee to the plaintiff is dated January 25, and the deed in controversy is recorded February 15, 1892, the plaintiff must have subscribed to it within a period of twenty days; and, if acknowledged at all, it must have been acknowledged within the same period.   When and where, at what particular time and place, did the plaintiff sign this deed?   The circumstance of the green ink indicates that it was signed at her house; she did, in fact, sign it, but did anybody see her do it?   Mrs. Young states in a positive manner that she signed it in her presence, and that, in the presence of the plaintiff, she, the witness, signed the certificate with the same pen and ink.   The plaintiff gives a point blank denial. She has no recollection of the fact of signing, and is it also a case of want of recollection of the fact of acknowledgment?   As to this, it might be answered that, if the latter circumstance occurred, it would naturally be impressed upon her memory.   However that may be, the lack of recollection of the one fact ought not to be disregarded as a matter of slight importance or significance in considering the weight to be given to the officer's evidence.   More than four years had intervened.   Then, again, the plaintiff declares that she never

signed any instrument without reading it, and that every paper she signed she knew the contents of; but here is the paper that she did sign; and in the former action she made the same statement, and her signature was proved by expert testimony. Mrs. Young testified that plaintiff did read the deed, or "looked it over," and, in this respect, they agreed in their testimony. If plaintiff has sworn truly, we assume that she must have read the instrument. This also may be deemed a corroborating circumstance. If then the signature is genuine, there is a probability that the acknowledgment is not fictitious. The evidence furnished by the signature is a circumstance tending to sustain the truth of the commissioner's testimony. These are circumstances of corroboration and attendant upon the doing of the act: That there was green ink in the house and the plaintiff must have signed her name there, and that she looked over the deed before she signed it and knew its contents.

It is true that in the action referred to much significance was not attached to the testimony of the plaintiff that she never signed a paper without reading it or knowing its contents; but, in that case, there was no reason or probability that the plaintiff ever intended to sign away her homestead, and the notary denied the taking of the acknowledgment.

The fact of the execution and of the delivery of the deed depended upon the testimony of Dorthy, the real beneficiary, and his testimony was incredible. The ground of the decision was that both the signatures of the plaintiff and of the notary were obtained or procured by means of some fraud, trick or artifice, and the mortgagees parted with nothing on the strength of the plaintiff's signature itself, independent of the certificate. But here, under the circumstance alluded to, it is proper to take into consideration in determining the truth of the officer's testimony that plaintiff looked over the deed and knew its contents, for it harmonizes with the witness' statement of the transaction. Then, again, the commissioner is corroborated by the testimony of plaintiff's own daughter, the wife of Dorthy, to the effect that an arrangement was made by which Dorthy was to take the title and make the weekly payments on the loan association mortgage, and to make other necessary payments upon the property by way of insurance, taxes and assessments.

The decision of the court below involves a finding that Mrs.

Young must have been guilty of willful and deliberate forgery and perjury. It is hardly credible that this young woman should be so accommodating as to come voluntarily from a place outside the jurisdiction of the court for the deliberate purpose of aiding the crime of perjury to her "catalogue" of supposed crimes, simply to oblige Mr. Dorthy; rather, we should suppose she would rely for her protection from criminal liability upon her presumed ignorance of the essentials of legal formulas and requirements. It is said, in a general way, that the presumption against the commission of crime is so strong as not to be overcome, except by evidence of a high degree of credibility. (*Hoffman* v. *Hoffman*, 6 App. Div. 84.)

Here the supposed crime is held to be established by the bare denial of a party possessed with a strong pecuniary incentive in impeaching the certificate whose truth is shown, not only by the oath of the commissioner herself, but also by other testimony and all the attendant circumstances and probabilities of the case. The testimony of the witness Young was positive, direct, unequivocal and consistent with incidental corroboration of the circumstances, and she remained unimpeached and uncontradicted, except by the party in interest. We think it was the duty of the court to give credit to her testimony. The positive testimony of such a witness, with corroborating circumstances, cannot be disregarded by the court or jury arbitrarily or capriciously; they are bound to believe, for judicial purposes, testimony of that character, and in an instance like this we deem it our duty to set aside a decision founded upon a disbelief of all the evidence favorable to the defendant's case. We are unable to see why, in this instance, so great a degree of credibility should have been given to the testimony of the party herself, when there is no apparent reason for disbelieving the evidence of the commissioner. The latter was subjected to a rigid cross-examination, but her testimony in all essential particulars remained unimpeached. We have nothing more against this certificate of any substance than the denial of the plaintiff herself as to the fact of acknowledgment, and the oath of the commissioner on the stand is opposed to her oath. If it be objected that the commissioner has a strong motive to support her official certificate, the reply is that the plaintiff must have an equally strong, if not stronger, motive to defeat or impeach it.

In conclusion, we are of the opinion that the statutory presumption of the truth of the certificate, and the presumption against the commission of crime and the deliberate violation of duty by a public officer, confirmed, as they are here, by the positive testimony of the commissioner who took the acknowledgment, and supported by other testimony and all the attendant circumstances, inferences and probabilities of the case, ought not to be deemed overcome by the bare failure of memory or the positive denial of the party in interest, who also fails to recollect the signing of the instrument.

The contention is made by plaintiff's counsel that the failure of Barker to make inquiry of Thompson, the mortgagor, deprives him of the character of a *bona fide* purchaser. The argument is based upon the erroneous assumption that the mortgage was without consideration; but that is not so, for the conveyance was the consideration for the mortgage, and the land was charged with it. No inquiry of Thompson would have given Barker any information as to the execution and acknowledgment of the deed.

But it by no means follows that the deed to Dorthy must be upheld, for it is sufficiently apparent from the version he gives of the understanding and arrangement with Mrs. Marden that there was no legal reason or necessity that he should be vested with the absolute title and beneficial use, free from any trust, or power in trust, expressed in the deed. The case comes fairly within the equitable rule which casts upon the parties who were benefited by the transaction the burden of showing that the transfer was the voluntary, intelligent act of the party who made it, and that its nature and effect were fully understood. Where the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality, but that either on the one side, from superior knowledge of the matter, derived from a fiduciary relationship, or from overmastering influence; or, on the other, through weakness, dependence or trust justifiably reposed, unfair advantage in a transaction is rendered probable, then the burden is shifted. The transaction is presumably void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair. The burden was cast upon Dorthy of showing that the nature of

the transaction was fully understood and comprehended by the plaintiff, and the trial court was justified in holding that the proofs did not warrant that conclusion. (*Barnard* v. *Gantz*, 140 N. Y. 249; *Mason* v. *Ring*, 3 Abb. Ct. App. Dec. 210; *Smith* v. *Duffy*, 1 How. Pr. [N. S.] 340; *Smith* v. *Smith*, 34 N. Y. St. Repr. 116; *Gibbs* v. *N. Y. Life Ins. & Trust Co.*, 14 Abb. N. C. 1, and notes.)

Dorthy is an attorney at law, and was the plaintiff's adviser and counselor in matters relating to her property, and in him she reposed implicit confidence. Giving all due weight to the testimony of both Mr. and Mrs. Dorthy, it does not follow that the plaintiff understood and comprehended the legal effect and consequence of the paper she signed. According to Dorthy's own statement he must have known, as a lawyer, that the arrangement could be carried out and the purposes accomplished by the execution of a simple power of attorney, or by a deed containing a power in trust, or by some other suitable clause, by which the interests of both parties might be protected. In taking the absolute title he violated a duty which he owed to his client. He says that he was empowered to sell the property, and that he agreed to turn over the proceeds, after satisfying the incumbrances and reimbursing himself for moneys paid out. This shows that it was not intended that he should be the *real*, legal owner of the property. But he did not sell; he made a pretended conveyance to his stenographer, Miss Thompson, and took back a mortgage which he assigned to Barker. He had no right to do that, even though the plaintiff may have been indebted to him. It is not a necessary inference, from the several conversations with the plaintiff, that she believed and understood that she conferred the absolute title upon Dorthy. And his counsel concedes that Dorothy took the property to take care of it for her, received the deed for that purpose, *and became her trustee*, and has taken care of it for her; that the plaintiff may have her property by paying off the mortgages upon it and reimbursing him what money she owes him over and above the rents received. Dorthy says he paid over $1,200 on the loan association mortgage, paid taxes and insurance, paid about $100 for repairs, and received about $180 for rentals, and claims that, upon a just accounting, the plaintiff will be found indebted to him in several hundred dollars. He received about $2,600 of the plaintiff's money, but says he accounted for it. Since

the plaintiff must pay the Barker claim of over $800, Dorthy is chargeable with that amount.

We are aware of the doctrine that, where the guilt of a transferee in fraud of creditors is constructive only, money paid by him in reduction of valid pre-existing incumbrances may be allowed to him on setting aside the transfer as fraudulent. (*Lore* v. *Dierkes*, 16 Abb. N. C. 47.)

But it is otherwise where he is a party to the fraud, and the conveyance will not be permitted to stand as security for any purpose of indemnity or reimbursement. (*Davis* v. *Leopold*, 87 N. Y. 620.)

In *Mason* v. *Ring* (*supra*), where a deed given to an attorney as compensation for professional services rendered was declared invalid, it was permitted to stand until inquiry was made as to the value of non-professional services in managing the estate, and the accounts were finally adjusted.

But the defendant Dorthy's acts and conduct in this matter are so censurable that he deserves no further consideration at the hands of the court in the present action. If he has a just claim against the plaintiff upon an accounting, and an equitable lien upon the land, let him seek his remedy by action for that purpose. The accounts of the parties were not involved in the issues in this action, and there is no necessity for retaining it so that the answer may be changed into a complaint against the plaintiff.

The judgment, so far as costs are adjudged against the defendant Barker, should be reversed. The judgment should be modified so that the mortgage of September 21, 1894, shall be a valid lien upon the premises therein described, to the extent of $865.87, and interest thereon from the time the last-named sum was paid by defendant Barker, upon the faith of said mortgage, and, as so modified, judgment affirmed, with costs of the trial and of this appeal to the defendant Barker against plaintiff, and with costs to plaintiff against the defendant Dorthy.

All concurred.

That portion of the judgment which allows costs against the defendant Barker is reversed. That portion of the said judgment declaring and adjudging absolutely void the mortgage upon the premises described in the complaint and executed by Carrie M.

Thompson to John F. Dorthy to secure the sum of $2,150, bearing date September 21, 1894, and assigned by said Dorthy to the defendant Barker, is modified so as to provide that the said mortgage be adjudged and declared a valid and subsisting lien upon the premises therein described, to the extent of the sum of $865.87 and interest thereon from April 18, 1895. And that, upon payment of said last-named amount and interest, the said mortgage shall cease to be a lien upon said premises and shall be discharged of record.

The judgment as so modified, affirmed, with costs of this appeal to plaintiff against the defendant John F. Dorthy; and with costs of the action in the court below, and with costs of this appeal to the defendant Barker against the plaintiff.