PRIME et al. v. CITY OF YONKERS.

(Supreme Court, Appellate Division, Second Department. March 5, 1909.)

1. APPEAL AND ERROR (§ 1009*)—REVIEW—FINDINGS OF FACT.
Before there can be a reversal on the facts in an equitable action, it must appear that the findings were against the weight of evidence or that the proofs so clearly preponderate in favor of a contrary result that it can be said with reasonable certainty that the trial court erred in its conclusions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3971, 3974; Dec. Dig. § 1009.*]

2. MUNICIPAL CORPORATIONS (§ 846*) — NEGLIGENCE AS TO WATERWAY — EVIDENCE.
In an action against a city to abate a nuisance, consisting of an old abutment left in a waterway after dams were removed, which so disposed the flow of the water that it caused injury to plaintiff's land, evidence *held* to support a finding of improper construction.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1799; Dec. Dig. § 846.*]

3. TRIAL (§ 379*)—EQUITY CASE—TRIAL BY COURT—RECEPTION OF EVIDENCE.
In equity trials without the aid of a jury, the old chancery rule as to the admission of evidence obtains, and, though improper testimony is ad-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

mitted, the judge is supposed to know what is proper and what should be disregarded.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 894; Dec. Dig. § 379.*]

4. EVIDENCE (§ 506*)—EXPERT TESTIMONY—MATTERS DIRECTLY IN ISSUE.

In an action based on the negligence of a city as to an old abutment left in a waterway after dams were removed, an expert for plaintiffs was asked if it was the exercise of reasonable and proper care in the management of such a waterway to leave such a wall in it after the dams had been removed and the swift current had replaced the still water, and also if such construction was negligent and unskillful, in his opinion, after the dams were destroyed. *Held*, that these questions were improper, as placing the expert in the seat of the court.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2308; Dec. Dig. § 506.*]

5. MUNICIPAL CORPORATIONS (§ 845*) — NEGLIGENCE AS TO WATERWAY — EVIDENCE.

In an action against a city, based on its negligence in respect to a water course wherein it had left an old abutment after the removal of dams, it was competent to inquire as to the skill and propriety of the construction of the wall with reference to the protection of the bank, which was washed away and resulted in the damages complained of.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1799; Dec. Dig. § 845.*]

6. MUNICIPAL CORPORATIONS (§ 745*)—LEAVING OLD ABUTMENT IN WATERWAY —LIABILITY FOR INJURY THEREFROM.

That an old abutment in a city waterway did not cause injury till after dams were taken down, and that the dams were taken down by an agent for which the city was not responsible, does not shield it if the abutment then made the waterway inadequate, and the city omitted reasonable care in its maintenance in such condition.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1566; Dec. Dig. § 745.*]

7. APPEAL AND ERROR (§ 1011*) — REVIEW — FINDINGS OF TRIAL COURT — CONFLICTING TESTIMONY.

The appellate court is not warranted in overturning a finding of the trial court supported by the testimony of several witnesses, even if it be absolutely contradicted in toto.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3983; Dec. Dig. § 1011.*]

8. LIMITATION OF ACTIONS (§ 55*)—ACTION AGAINST CITY FOR NEGLIGENCE.

In an action for injuries claimed to be caused by the negligence of a city in respect to a waterway damages for injuries done six years before the suit was begun cannot be recovered.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 304, 305; Dec. Dig. § 55.*]

9. APPEAL AND ERROR (§ 760*) — REVIEW — DUTY TO POINT OUT ERROR IN RECORD.

It is the duty of counsel insisting on error to point out wherein it appears in the record, and not of the court on review to find it in support of the counsel's points.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3095; Dec. Dig. § 760.*]

Appeal from Special Term, Westchester County.

Action by Ralph E. and Alanson J. Prime against the City of Yonkers. From a judgment for plaintiffs, defendant appeals. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

John F. Brennan, for appellant.

Henry Bacon (Ralph Earl Prime, Jr., on the brief), for respondents.

JENKS, J. The plaintiffs' judgment was reversed by the Court of Appeals. 192 N. Y. 105, 84 N. E. 571. The defendant now appeals from plaintiffs' judgment on the new trial then ordered. The action is in equity to enjoin a continuing nuisance and trespass, to restrain unlawful acts which affect plaintiffs' premises, and to recover incidental damages. The judgment is for $9,000 damages to the plaintiffs' premises. The parties by stipulation read in the testimony of the first trial and gave new testimony. The Special Term has made findings like unto those found on the first trial, but supplemented by additional findings upon the new testimony.

The plaintiffs own realty in the city of Yonkers, acquired in 1891 and improved before May, 1892, along the northerly side of the Nepperhan river. This river flows through the city, east to west, into the Hudson river. Several dams had been built along the Nepperhan river. In 1891 there was a dam of many years' standing, below these premises, that ponded and slackened the waters above the premises. In 1860 the then village laid out and built a street, called Warburton avenue, which was continued as a solid causeway through and across the pond, so as to leave the larger part of the pond to the east of that causeway. Two openings of 20 feet each were made in the causeway to permit the flow of water from the east to the west side of the street. These openings were not at right angles to the street and its causeway, but conformed to the natural course of the stream through the pond. In 1878 the defendant closed both openings, and substituted a pipe 3 feet in diameter at the southerly end of the causeway, fitted with a gate, and at the northerly end an opening 40 feet wide at right angles to the street and its causeway, and consequently at an angle with the natural course of the stream. In this construction a part of an abutment of an old 20-foot opening was left extending diagonally for 28 feet across the new 40-foot opening. This abutment had been taken down only to the level of the water or the bottom of the pond as it then existed. In 1892 the pond became a nuisance from the filth and refuse therein, and the board of health of the city of Yonkers removed the dams, including the dam below. Thereupon the character of the river changed from a sluggish and quiet stream to a swift and rapid one. It washed away the sediment of the pond, and then wore away the bed of the river. In consequence, the remains of this old abutment became exposed, and, as the learned Chief Judge, in the opinion of the Court of Appeals, described it, " it acted as a funnel," increasing the velocity, flow, and force of the stream against the premises of the plaintiffs, so as to injure them.

The learned Chief Judge, writing for the court, held that under the circumstances of the case the two facts alone, that the city in reconstructing the causeway left the old abutment in the waterway, and

that the abutment caused the damage, were insufficient to cast liability upon the city, for the reason that the defendant could only be charged with liability for these consequential damages by reason of negligence in the construction, and yet there was no finding of fact upon negligence, "the vital element of the case." It was further held that although the duty upon the defendant to provide reasonable waterways for the flow of the stream was continuous, and might well require the city to change inadequate waterways when it was necessary in view of changed conditions, yet the only measure of that duty was reasonable care. The Chief Judge then pointed out that it was not contended that so long as the pond remained the old abutment affected the flow, that it was the act of a third party (the board of health, for which the defendant was not responsible) in removing the dams which made that abutment a cause of injury, and yet there was no finding that the defendant was negligent in improper maintenance of the waterway after the destruction of the dam below. And the learned Chief Judge also pointed out:

"It cannot be said as a matter of law that in 1878 the defendant was bound to foresee the probability of the dam being removed and the sediment in the pond being carried away, nor can it be said as a matter of law that after the destruction of the dam the defendant was bound to know that the old abutment was causing injuries to the plaintiffs' property when the latter were themselves ignorant of the fact until 1896, and neither then nor later made any complaint thereof to the defendant. These were questions of fact for the determination of the trial court."

The Special Term has found that the reconstructed waterway under Warburton avenue as originally constructed was inadequate and insufficient to accommodate and safely provide for the flow of the waters of the Nepperhan river by reason of the leaving thereon of the southerly abutment of said old waterway standing diagonally across the same—

"and that such inadequate, unskillful, and insufficient construction after the removal of the same aforesaid and the change thereby caused in the force, direction, and volume of the flow of said river from the easterly to the westerly side of the embankment of Warburton avenue, and the consequent washing out of the deposit upon the bottom of said pond, became dangerous and actively destructive of the support of the buildings of the plaintiffs on the westerly side of said stream, and that the said city of Yonkers did not thereafter exercise diligence and care in maintaining said waterway and keeping the same in proper and safe condition, and after due notice given to the said city and its officers negligently and carelessly permitted the said dangerous condition to continue and to increase, and, although duly notified, negligently and carelessly and improperly neglected to remove the abutment of said old south waterway where the same crossed and obstructed the new waterway, and caused the waters flowing therein to be confined in a narrow channel and thrown against the westerly bank and foundation of the plaintiffs' buildings with great force and to their great damage and destruction, and that in so doing the said city of Yonkers was guilty of negligence in maintaining the waterway in an improper manner, and in not altering, changing, and removing obstructions therein after the necessity for alterations and change and removal had become known to the said city and its officers, and they had become chargeable with knowledge and notice thereof, and that as the result of such original, improper, and unskillful construction and plan, and of such wrongful and negligent maintenance thereof, the property of the plaintiffs was damaged and injured by the waters of said stream to the extent and in the manner herein found."

It has found that the consequent damages to plaintiffs' premises were $9,000, and it has concluded that the defendant was guilty of negligence in the premises. The question is whether these findings and this conclusion are justified by the evidence, and whether the judgment is sustained by the law of this case as declared by the Court of Appeals. Before we can reverse upon the facts, it must appear that the findings were against the weight of evidence, or that the proofs so clearly preponderated in favor of a contrary result that it can be said with a reasonable degree of certainty that the trial court erred in its conclusions. Lowery v. Erskine, 113 N. Y. 52, 20 N. E. 588; Foster v. Bookwalter, 152 N. Y. 168, 46 N. E. 299; Marden v. Dorthy (No. 1) 12 App. Div. 176, 42 N. Y. Supp. 834. I think that the evidence is sufficient to sustain the findings and that the conclusion of law follows therefrom. The plaintiffs' expert Southard, who went exhaustively into the question of construction, the effect of leaving the old abutment upon reconstruction, and the effect thereof after the dams had been taken away, testified finally that it was not a safe and skillful construction to leave the old abutment in the new 40-foot opening, with reference to the protection of the bank after the dams were destroyed. His testimony was the sole expert testimony offered in the case.

The learned counsel for the appellant contends that his testimony, when read throughout, does not support the plaintiffs', and attention is called to his testimony upon cross-examination as follows:

"Without the transverse masonry work, leaving the transverse masonry work all out, that construction of a 40-foot waterway, running as indicated, would not be faulty construction with that out as long as the dam remained there. Whether it would be faulty construction work after the time that the dams came down, I am unable to answer, not knowing the fall."

But it is to be noted that the answer expressly eliminates the transverse masonry work, which it is contended was the very defect that caused the injury after the dams were taken away. This is the clearer from the statement of the witness immediately preceding:

"I say that the construction of such a waterway 40 feet wide to take the place of two waterways, one to the north and one to the south of it, 20 feet wide, would be improper construction with this transverse mason work through it."

It is urged that the court erred in its ruling upon the certain questions addressed to this expert, which were as follows:

"Q. And was it the exercise of reasonable care, proper care in the management of such a waterway, to leave such a·wall in it after the dams had been removed, as testified to here, and the swift current had replaced the still water of the dam? (Objected to on the same grounds as before, and also on the ground that it is not expert testimony. Objection overruled. Exception.) Q. Such construction was negligent and unskillful, in your opinion, after the dams were destroyed? (Same objection. Overruled. Exception.)"

The contention is that these questions placed the expert in the seat of the court, against the rule of Dougherty v. Milliken, 163 N. Y. 527, 57 N. E. 757, 79 Am. St. Rep. 608. This rule seems to be well established in this state (Welle v. Celluloid Co., 186 N. Y. 319, 79 N. E. 6; Schutz v. Union Railway Co., 181 N. Y. 33, 73 N. E. 491); and tested by it the questions were erroneous. But it is to be remembered that

this was an equity trial (without the aid of a jury), and in such cases the old chancery rule obtains. Townsend v. Bell, 167 N. Y. 470, 60 N. E. 757. It is said in McSorley v. Hughes, 58 Hun, 360, 12 N. Y. Supp. 179, affirmed 129 N: Y. 659, 30 N. E. 65:

· "Some exceptions were taken to the admission of testimony, and it is urged that a new trial should be granted upon that ground. But that has never been the practice in equity. Under the ancient practice, testimony in equity was taken before an examiner, who took all that was offered, and the chancellor decided upon the case so brought before him. Under that system there could ·not well be any question as to the proper reception of testimony. The judge was supposed to know what testimony was proper and what should be disregarded, and the recent practice of taking testimony in equity cases before the court has not so changed the rule as to make the improper reception of evidence a ground of reversal. Forrest v. Forrest, 25 N. Y. 510."

See, too, Shaffer v. Martin, 25 App. Div. 512, 49 N. Y. Supp. 853; De St. Laurent v. Slater, 23 App. Div. 70, 48 N. Y. Supp. 1103; Donovan v. Clark, 138 N. Y. 631, 33 N. E. 1066.

In Young v. Valentine, 177 N. Y. 357, 69 N. E. 646, the court say:

"This action was in equity, and the rule which is applicable to errors in the rejection or reception of evidence in equity cases is essentially different from that in actions at law. In the former a new trial is granted or refused, not upon the principles applicable to a strict bill of exceptions, but upon those which governed a court of equity, and unless·the errors are such as to render the trial unfair, or substantially affect the decision, a new trial will be denied. Forrest v. Forrest, 25 N. Y. 501; Colie v. Tifft, 47 N. Y. 119, 121; McGean v. Manhattan Ry. Co., 117 N. Y. 219, 224, 22 N. E. 957."

Aside from the testimony thus elicited, the evidence is sufficient to sustain the finding. It was competent to inquire as to the skill and propriety of the construction. Finn v. Cassidy, 165 N. Y. 584, 59 N. E. 311, 53 L. R. A. 877; Jenks v. Thompson, 179 N. Y. 20–25, 71 N. E. 266.

The fact that the old abutment was not a cause of injury until after the dams were taken down, and that the dams were taken down by an agency for which the defendant was not responsible, does not shield the defendant, if the abutment then made the waterway inadequate, and the city omitted reasonable care in the maintenance of the waterway in such condition.

This brings me to the question of notice found by the Special Term. The court has found that shortly after the destruction of the dam, and in the year 1893, the defendant and its officers were—

"informed and notified and warned of the changed condition produced in said stream and mill pond by the removal of said dam, and of the fact that the stream had already washed out the deposit in said pond where the same crossed under Warburton avenue, and had gone down ·several feet, and was washing away the ·bank at the margin of the mill pond opposite said north waterway under Warburton avenue, and that the foundations of plaintiffs' building and of other property on the banks of said stream were being endangered and undermined by the action of said stream.

"(13) In the year 1896 the defendant city of Yonkers and its officers were notified and warned that the bed of the stream under Warburton avenue, where it passed through said reconstructed northerly waterway, had gone down several feet and had become washed out and undermined, and that the foundations of plaintiffs' building at that place had been injured and damaged and undermined, and that an obstruction to the flow of the waters of the stream through said north waterway existed in said waterway, and had caus-

ed damage to the plaintiffs' building, and the commissioner of public works of said defendant was requested to examine the conditions and remove such ob-struction.

"(14) In 1901 the defendant city of Yonkers and its officers were informed of further damage to the foundations of plaintiffs' building at and opposite to the said waterway under Warburton avenue, but failed to take any meas-ures to prevent the continuance thereof. ·

"(15) Although repeatedly notified of the dangerous, defective, and obstruct-ed conditions of the said waterway under Warburton avenue, and that repeat-edly from 1893 to 1902 damage and injury to plaintiffs' building was being thereby caused, and its foundations were being repeatedly undermined and destroyed, the defendant city of Yonkers and its officers failed and neglected to remedy such conditions, or to remove from said waterway the obstructions placed and left therein by it, or to change and reconstruct and alter said wa-terway so as to adequately accommodate and provide for the increased flow of the waters of the Nepperhan river after the destruction of said mill pond."

I think that this conclusion is supported by the testimony of the several witnesses called by the defendant. Even if their testimony was absolutely contradicted in toto, I think we would not be warranted in overturning the finding of the Special Term. But examination of the record shows that there is not such absolute contradiction, but that the testimony contra is either negative or is qualified, short of absolute contradiction. This new testimony is hardly subject to the just criti-cism that it is testimony once offered and now changed in order to meet defects pointed out by an appellate court, for the reason that it is new in order to establish liability as declared by the Court of Ap-peals. It is testimony once omitted, not once offered and now recast.

It is quite true, as contended by the appellant, that the plaintiff could not recover damages for injuries done prior to December 26, 1896, as the suit was begun on December 26, 1902. Colrick v. Swinburne, 105 N. Y. 503, 12 N. E. 427. The learned trial court found that the plain-tiffs actually expended upon the property in consequence of these in-juries $9,000 within six years prior to the commencement of this ac-. tion. I am not cited to any item of expenditure included therein prior to the six-year period, and I have not come across any during my read-ing of the record. Some injuries may have been done to these prem-ises during the last five days of 1896. However this may be, if the judgment is erroneous in this respect, it is the duty of the learned coun-sel who insists on such an error to point it out, and not of the court who reviews to find it in support of the counsel's point.

I advise the affirmance of the judgment, with costs. All concur.