### SHAFFER v. MARTIN et al.

(Supreme Court, Appellate Division, Fourth Department. February 6, 1898.)

1. FRAUDULENT CONVEYANCES—PARTNERSHIP—ADVANCES BY PARTNER.

C. and G. were partners in business. C. contributed to the firm, as his own money, the proceeds of a house which belonged to his deceased wife, and in which he had a life estate; G. supposing that the money thus contributed belonged to C. absolutely. Afterwards, the firm being insolvent, C., without the knowledge of G., sold to his daughter (to whom his other children had assigned their claims in the money advanced by C. to the partnership) and two other parties the stock in trade of said business, and gave them a bill of sale therefor, signed by him in the name of the firm. The consideration expressed in the bill of sale was the amount which C. had contributed to the business out of the proceeds of the house, and interest thereon, and certain debts which were legally due from the partnership to the other two grantees therein. The property described in the bill of sale was equal in value to the claims it was sold to satisfy, including the interest. Held, that the bill of sale was void as to the daughter of C. (he having

no right, as against other creditors, to allow interest on money in which he had a life estate), and, being void as to one, was void as to the other grantees.

**2. PARTNERSHIP—ADVANCES BY PARTNER—RIGHTS OF CREDITORS.**

Where a partner advances borrowed money to his firm, as his own, and his partners have no notice of the source from whence the money came, the person who loaned the money to the partner does not become a creditor of the firm.

**3. STATUTE OF FRAUDS—PERSONAL PROPERTY.**

Where a sale of personal property is void in part, as within the statute of frauds, it is void in toto.

**4. SAME—RIGHTS OF VENDEES.**

Where a bill of sale is good as to certain grantees, and bad as to another, and by the instrument the title in the things sold is so blended that on the face thereof the good cannot be separated from the bad, the instrument is void as to all.

**5. ADMISSION OF EVIDENCE—REVIEW.**

An error in the admission of evidence in the trial of an equity case will not be cause for reversal unless it appears on appeal that the error complained of has affected the result.

Follett and Green, JJ., dissenting.

Appeal from special term, Monroe county.

Action by William H. Shaffer, as receiver of the firm of Curran & Goler, against Sabina C. Martin and others. From a judgment for plaintiff entered on the decision of the trial court at equity term, defendants appeal. Affirmed.

The defendants Richard Curran and Frances T. Goler on the 9th day of December, 1895, were co-partners, under the firm name of Curran & Goler, in the drug business; having a store at No. 44 West Main street, Rochester, N. Y. At that time the firm was insolvent; owing about $25,000, and their property being valued at less than $12,000. A number of judgments had been entered and docketed against them in Monroe county, and executions returned unsatisfied. In 1865 the partnership in this drug business had been entered into between Richard Curran and George W. Goler, the husband of Frances T. Goler, and the business carried on by them until October, 1876, when, George W. Goler becoming embarrassed in other business ventures, a nominal dissolution of the firm occurred; the interest of George W. Goler being transferred to Frances T. Goler, and Curran and Mrs. Goler carrying on the business as a firm until the 9th of December, 1895, aforesaid. In 1882 the firm contemplated a removal to a larger and more elegant store, and for that purpose needed a larger capital in their business. The discussion of this necessity resulted in a contribution to the capital of the concern of $2,700 by Curran, and $3,500 by Mrs. Goler. About the year 1882 a house in Rochester, that Richard Curran had purchased out of means derived from the firm business, and had deeded to his first wife, was required· by the city for the purposes of a street; and condemnation proceedings resulted in about $6,000 coming into the hands of Curran. The first wife of Curran had died without devising the property,. leaving four children of the marriage with Richard Curran, viz. Mary, Sabina, Emma, and Monica. Curran, with about $3,000 of this money, had bought another house and lot in Rochester, and had it deeded to his second wife, and deposited $2,700 of the remainder in a bank in Rochester, in his name, as guardian. This $2,700 was the money that Richard Curran paid as his share of the increased capital aforesaid. On the said 9th day of December, Richard Curran, under the firm name of Curran & Goler, and without the knowledge of Frances T. Goler, made and delivered to George H. King, Rosa R. King, and Sabina C. Martin, formerly Sabina C. Curran, the daughter of Richard Curran, an instrument in writing, of which the following is a copy:

"In consideration of the sum of seventy-three hundred dollars, we hereby sell and transfer to George H. King, Rosa R. King, and Sabina C. Martin all the drugs, medicines, fancy goods, cutlery, surgical instruments and appliances, per-

fumes, and goods of every description, now in the store No. 44 West Main street, in the city of Rochester, N. Y., except any mineral waters in said store, and also all fixtures therein, with the exception of the soda fountain. This sale is in full payment and satisfaction of our indebtedness to the above parties.

"December 9, 1895.                                        Curran & Goler."

At the same time the daughters Mary, Emma, and Monica executed separate instruments assigning to Sabina C. Martin "my claim against the firm of Curran & Goler, the said claim being the one-fourth part of about twenty-seven hundred dollars, with interest therefrom from the month of January, 1883; the same being for moneys received by said firm of Curran & Goler, and belonging to me, or to which I was entitled." On the 10th day of December, 1895, Frances T. Goler executed to her son Frank H. Goler, as trustee, a transfer in writing of the same property covered by the bill of sale from Richard Curran, and other property, in trust for the payment by the trustee of eight creditors of the firm, in addition to a claim of the trustee representing considerable indebtedness, and covering the property of the firm, substantially. This instrument was made without the knowledge or consent of Richard Curran. Richard Curran then commenced an action against his partner, Mrs. Goler, to dissolve the partnership, and to distribute its effects among its creditors; and in that action the plaintiff in this action was appointed receiver of the property of the firm. He, with the authority of the court, instituted this action to have declared fraudulent and void, as against the creditors of the firm, the bill of sale, and the instrument of trust to Frank Goler. The trial court set aside and declared void these two instruments, as against the creditors of the firm, and directed that the property of the firm, or the proceeds, be deposited in a bank in Rochester, by consent of all the parties, to await the result of this action, and should belong to the plaintiff, for distribution among the creditors of the firm. Neither of the partners answered in the action, but the Kings and Mrs. Martin and Frank Goler, as trustee, did answer; the Kings and Mrs. Martin alleging in their answer that the instrument executed to Goler was void as against creditors; and Frank Goler, the trustee, alleging that the bill of sale was fraudulent and void as against creditors. The only parties appealing from the judgment are the Kings and Mrs. Martin.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

James Breck Perkins, for appellant Martin.

F. E. Drake, for appellants George H. and Rosa R. King.

P. M. French, for respondents.

WARD, J. The trial court made full and exhaustive findings of fact, among which was the following: That the bill of sale above set forth was "executed and delivered by the said defendants Richard Curran and Frances T. Goler, and was received and accepted by said defendants George H. King, Rosa R. King, and Sabina C. Martin, with intent to hinder, delay, and defraud the just creditors of the said defendants Richard Curran and Frances T. Goler of their lawful claims, debts, and demands, and particularly to so hinder, delay, and defraud the judgment creditors and other creditors of the partnership, and that said defendants [Curran and Goler] have no other property than that attempted to be conveyed by said bill of sale, out of which the judgments above set forth [the ones against the firm] can be collected." That no testimony was offered upon the trial to prove that Richard Curran was ever appointed guardian for his children. That neither the defendant Frances T. Goler, nor her husband, nor any other agent of hers, knew the source from which the $2,700 had been derived, at the time it was contributed to the partnership capital by Richard Curran; nor did they have such knowledge prior to the year

1894, or that said sum belonged to any trust fund. That Richard Curran was the tenant by the curtesy, after the death of his first wife, 'in the house and lot condemned for public purposes, and after its sale was entitled to the use of the fund realized therefrom, and that he never executed a consent to take a gross sum on account of such tenancy. It is apparent that the consideration of the bill of sale consisted of two elements: First. A claim of the defendant Sabina C. Martin, growing out of the fact that in 1882 Richard Curran, one of the partners of the firm of Curran & Goler, upon an arrangement with the other partner, Frances T. Goler, through her husband, George H. Goler, put the $2,700 into the firm to increase its capital. This money had been deposited in a bank in Rochester by Richard Curran, and was a part of a fund received from the city of Rochester in condemnation proceedings, whereby a house and lot were taken for public use, the title to which was vested in the first wife of Richard Curran, and upon her death had vested in Sabina C. Martin and her three sisters, subject to a life estate of Richard Curran. This $2,700, and interest on the same from January 1, 1883, until the execution of the bill of sale, amounted to $4,618.83, which went into the consideration of the bill of sale, expressed at $7,300; thus including, as a consideration in the bill of sale, about $2,000 of interest upon the amount paid into the firm by Richard Curran. The other element consisted of debts due to the defendant Rosa King, in the sum of $886.75, and to George H. King, in the sum of $1,794.42; making the balance of the consideration up to the amount stated in the bill of sale. It is conceded in the case that the claims of the Kings were just debts against the firm.

The defendants' first difficulty lies in the fact that about $2,000 of the consideration of this instrument consisted in interest upon, or use of, the $2,700 claimed by the defendant Martin, and which was never the property of Richard Curran's children, but belonged to Richard Curran himself, as the tenant by the curtesy in the real estate from which the money was realized. And, where land in which one has an interest as tenant by the curtesy is sold, the moneys obtained therefor represent the land; and the tenant by the curtesy is, in any event, entitled to interest thereon during his life. In re Camp, 126 N. Y. 377, 27 N. E. 799. The testimony in the case shows that the property transferred by the bill of sale was of the value from $7,000 to $8,000,—an amount evidently, in the estimation of the parties to the bill of sale, sufficient to pay the debts which made up its consideration. The effect of this transaction is that $2,000 of the consideration, the property of one of the firm, is turned over to one of his children, and his creditors deprived of it,—an element sufficient of itself to taint the transaction with fraud. Eliminating the $2,000 from the consideration, and we have the children of one of the partners and two favored creditors obtaining the property for $2,000 less than its value, which is a strong indicia of fraud upon the other creditors.

But the respondent claims that not only the interest on the $2,700 was fictitious and fraudulent, but the principal itself did not form a valid consideration for the bill of sale, for the reason that the chil-

dren did not become the creditors of the firm, nor was any trust upon the property of the firm impressed in their favor, because the evidence, fairly considered, establishes that neither Mrs. Goler nor her husband had any notice or knowledge at the time that this money was put into the firm that it belonged to the children, or that it was other than the money of Richard Curran. The appellants contend that the other partner had notice of the character of this fund; but, if she did not have such notice, as the money was put in for the benefit of the firm the knowledge of Curran was the knowledge of the firm. We will first consider the legal question raised, and then the question of fact, as to the notice.

Long ago Lord Chancellor Thurlow said, in Ex parte Apsey, 3 Brown, Ch. 265: "Where one, by abusing his trust, advances trust moneys to the partnership, that will not raise a contract between the partnership and the person whose money it is." In Jacques v. Marquand, 6 Cow. 497, the principle was laid down that a partner who holds money in his individual right, in trust for another, cannot subject the firm to an action for the money by applying it to the use of the firm, without the knowledge or privity of the other member or members of the firm; otherwise where it is applied with their knowledge or privity. And it was also held that where a partner borrows money on his individual credit, and afterwards applies it to the payment of partnership debts, or lends it to the firm, this does not make the original lender a creditor of the firm. The court in that case fortified its position by reference to a large number of English cases, and this case has been followed, without substantial dissent, in this state. Hollembaek v. More, 44 N. Y. Super. Ct. 107; Willett v. Stringer, 17 Abb. Prac. 152; Tallmadge v. Penoyer, 35 Barb. 120–126, and cases cited; Denton v. Merrill, 43 Hun, 228. And the same doctrine is asserted in 17 Am. & Eng. Enc. Law (1st Ed.) p. 1071, and cases cited in note 3. No privity could be established between the children of Curran and the firm, as to this $2,700, until its payment was adopted by the firm with the knowledge and assent of all its members; and thus, in equity, the relation of debtor and creditor was established between the children and the firm.

It is unnecessary to consider the question as to whether the advance of the new capital needed by the firm was in any sense a loan to the firm, and whether it did not bear the same relation to the creditors of the firm that an original advance of capital might have done, or whether the circumstance was material, in view of this advance of capital, whether the other partner knew the source from whence it came, as we have reached the conclusion, as will be hereinafter stated, that the other partner had no notice, as a matter of fact, of the source of this advance. The testimony as to whether this notice was given at the time the money was advanced is confined to the statements of Richard Curran and George W. Goler; Curran testifying that Goler had such notice, and Goler absolutely denying that any such notice was given, or that he had any knowledge of the same. Pregnant facts developed by the testimony serve to confirm the testimony of Goler. Curran testifies that, though he had this money for 13 years, he had in no manner notified his children of the fact that he had put

it into the firm until the day before the bill of sale was executed. He further testified that Goler had written him two letters, before the money was advanced, requesting that more money be put into the concern, and that it be taken out of the money which Curran had obtained as the proceeds of the sale of the house and lot; but he failed to produce any such letters, or account for their loss, though the sending of them was denied by Goler. The $2,700 was entered upon the books of the firm as received from Curran, and not as received from the children, nor as received from Curran as guardian or trustee; and Curran testified that he knew how it was entered upon the books of the firm, and that he never called attention to the fact that the entry was made in his name, and not in that of the children, or not to him as guardian, and he made no objection to this entry. He took no security or acknowledgment from the firm for this advance, and seemed to have treated the whole matter as his own, and probably upon the theory that he had a right to the possession of the fund as long as he lived, and could use it in his discretion, subject to the power of the court to compel him to give security or make proper investment.

In examining the findings of the learned trial judge, it appears that he reached the conclusions from the evidence which we here reach,— that the other partner had no notice either of the fact of the children's interest in the money, or of any facts sufficient to put her upon inquiry. But the learned counsel for the appellants the Kings contends that, although the bill of sale from Curran may be fraudulent and void so far as the claim of Mrs. Martin is concerned, still, as to the consideration advanced by the Kings, that should be protected out of the property covered by the bill of sale, in the proportion that the amount of the claim of the Kings bears to the whole consideration of the bill of sale. The respondent answers that the whole bill of sale is void, because it is obnoxious to the statute of frauds. Rev. St. (Banks & Bros., 9th Ed.) p. 1887, § 1, so far as it affects this question, is as follows:

"Every conveyance or assignment in writing or otherwise, of any estate or interest in lands, or in goods, or things in action, or of any rents or profits issuing therefrom, * * * made with the intent to hinder, delay or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suit commenced, decree or judgment suffered, with like intent, as against the persons so hindered, delayed or defrauded, shall be void."

The Penal Code (section 586) makes such conveyance or transfer a misdemeanor.

In Hyslop v. Clarke, 14 Johns. 458, 465, it was held that where a conveyance is good in part, and bad in part, as against the provisions of a statute, it is void in toto, and no interest passes to the grantee under the part which is good. That case disclosed that an assignment had been made, where certain creditors were preferred, who had honest claims, and the trustee was directed, after the payment of such claims, to pay other creditors, upon their releasing such portions of their debts as the surplus did not pay. The court held that this provision was coercive and unjust, and made the whole instrument void. The court says at page 465:

"It appears to be an established rule that where a bond is void in part, as against the positive provisions of a statute, the whole bond is void. This distinction was taken in the case of Norton v. Simmes, Hob. 14, between a bond made void by statute, and by the common law; for, upon the statute of Hen. VI., if a sheriff will take a bond for a point against that law, and also for a due debt, the whole bond is void, for the letter of the statute is so; for a statute is a strict law; but the common law doth divide according to common reason, and, having made that void which is against law, lets the rest stand; as is Y. B. 14 Hen. VIII. pl. 15. It is mentioned, also, as a saying of Lord Hobart, that the statute is like a tyrant. Where he comes, he makes all void. But the common law is like a nursing father, and makes void only that part where the fault is, and preserves the rest. Maleverer v. Redshaw, 1 Mod. 35. The principles upon which the case of Norton v. Simmes was decided are applicable to deeds of every description which are void in part as against the statute [referring to the provisions of the statute]. This applies to the whole deed, even though a part of it may have been good at common law. Indeed, if the whole of the conveyance made in violation of the statute is not held to be void merely because it may be held to be good in one particular, it would be very easy to elude the statute in every case. One good trust might always be inserted, so that what could not be accomplished directly would be attained indirectly."

Upon a similar state of facts, the same view was entertained by the court of errors in Grover v. Wakeman, 11 Wend. 187, 188.

In Goodrich v. Downs, 6 Hill, 438, a debtor assigned nearly all his property in trust,—the trustee to sell the same, and apply the proceeds to the payment of four of his creditors; making no provision for the payment of the others, and providing that the surplus remaining after paying the four creditors should be returned to the assignor. Held, that this last clause made the assignment void, and the four preferred creditors, though having just claims, could not be protected.

In Mittnacht v. Kelly, 3 Abb. Dec. 301, there was a chattel mortgage shown to have been given upon a horse, wagon, and harness, and upon a store of merchandise, "with the increase and decrease thereof." It was held that these last words quoted invalidated the whole instrument, in an action brought by the mortgagee to recover the value of the horse, buggy, and harness, that had been levied upon by a creditor of the mortgagor. The court says at page 302:

"True, in this case the horse, wagon, and harness in question did not constitute part of the stock in trade, which was the subject of the 'increase and decrease' spoken of, yet if, as to the stock in trade, the mortgage was fraudulent as against creditors, that fraud infected the whole mortgage, and it is wholly void;" citing cases.

In line with the decisions quoted are Russell v. Winne, 37 N. Y. 596; Curtis v. Leavitt, 15 N. Y. 96; Baldwin v. Short, 125 N. Y. 553, 26 N. E. 928. In the last case the question was as to whether the conveyance of a house and lot was fraudulent as against creditors. Part of the consideration was a debt of $8,000, which was justly due from the grantor to the grantee. It was sought to protect the grantee to the extent of this indebtedness, but Finch, J., sustaining the law as laid down in Hyslop v. Clarke, supra, says:

"The contention that the conveyance to Mrs. Short may be sustained to the extent of the adequate and honest part of the consideration is fully answered by the authorities which hold that, where a deed is fraudulent against creditors, it is wholly void, and cannot stand to any extent as security or indemnity."

It will be observed that these decisions are aimed at the instrument itself, as is the statute of frauds; and a distinction cannot well be maintained in favor of a party to such an instrument, who had no interest in the fraudulent part of the consideration, unless by the instrument itself the honest debt could be separated from the dishonest one, so that an intelligent decree could be made in behalf of the honest claimant. The bill of sale in this case must be interpreted by its terms. It provides that in consideration of $7,300 the firm sells and transfers to the Kings and to Sabina C. Martin all the drugs, etc., in the store, with slight exceptions, and that the sale should be in full payment and satisfaction of the vendees' indebtedness to the firm. Upon the face of the instrument, therefore, the sale is to the defendants jointly, and title vests in the subject of the sale, to an undivided one-third thereof, in each of the purchasers. Equity, like law, gives effect to the contract as written, and does not change the contract, except upon a direct proceeding for its reformation, for some of the reasons that equity recognizes as sufficient. The legal effect of this instrument is to so blend the title to these defendants, and the consideration received from them, that a separation is impossible upon the basis that the Kings should take an interest in the property sold, in the proportion that the consideration advanced by them bore to the whole consideration paid. Therefore the good cannot be separated from the bad, and the whole is condemned by the statute. Parsons, in his work on Contracts (volume 3, p. 18), says:

"If a contract be in its nature entire, and in one part it satisfies the statute, and in others does not, then it is altogether void; but, if these parts are severable, then it may be good in part and void in part."

But, in case the contract is severable, it must appear upon the face thereof, and not be established by proof outside of the contract itself.

The facts by which the defendants King seek to separate their claims do not appear in the bill of sale. They are shown aliunde the instrument, and when thus shown they vary the legal effect of the instrument. There are cases where the conveyance or sale was capable of being construed as several to each grantee or vendee, in the proportion in which the debts due to them, respectively, bore to each other, or where the instrument of transfer was given as a security running to different individuals to secure different claims; and it is upon this class of cases that the learned counsel for the Kings seems to rely to establish his contention. The evidence does not satisfy us that the defendants King were not aware of the nature of the consideration that entered into the bill of sale, with regard to the claims of Mrs. Martin. Mr. King was sworn, but gives us no information on this subject. The circumstances under which the paper was executed were certainly very suspicious, and it is difficult to believe that the Kings did not know all about it. If they did, they were privy to the fraud, and partakers in the attempt to hinder and delay the creditors of the firm, as the trial court has found, and we do not dissent from this conclusion; but, be this as it may, we have reached the conclusion that the instrument, as a whole, must fall, and we sustain the trial court in declaring it void and setting it aside.

The counsel for Mrs. Martin complains as to the admission of certain evidence by the trial court. The books of the firm were offered to show that, prior to the time when any information came to Goler or his wife of any claim on the part of the children of Curran that the money paid in by Richard Curran in 1882 was trust money, it had been withdrawn by Curran. It was objected to upon the ground that the books were not evidence, as against the children of Curran. The evidence was received. As to this evidence, no possible harm resulted to the defendants objecting, because the case was decided, and is here decided, upon the proposition, as to the $2,700, that it was never refunded by the firm to Curran.

Frank T. Goler was asked, as a witness, when he first heard that it was claimed that Curran had contributed trust funds; and he stated, under objection, that he heard of it the day of the execution of the bill of sale. In McSorley v. Hughes, 58 Hun, 360, 12 N. Y. Supp. 179, affirmed 129 N. Y. 659, 30 N. E. 65, the court says, after referring to exceptions that were taken to the admission of testimony upon the trial:

"Under the ancient practice, testimony in equity was taken before an examiner, who took all that was offered, and the chancellor passed upon the case so brought before him. Under that system there could not well be any question as to the proper reception of testimony. The judge was supposed to know what testimony was proper, and what should be disregarded, and the recent practice in taking testimony in equity cases before the court has not so changed the rule as to make the improper reception of evidence a ground of reversal"; citing Forrest v. Forrest, 25 N. Y. 510.

The rule, as established in many cases upon the subject, would seem to be that, where errors are committed in equity cases by the trial court, they are not to cause a reversal of the judgment, unless the court can see that the error complained of has affected the result, in contradistinction to the rule in jury cases, that the court will generally reverse unless it can see that the error complained of could not affect the result. The evidence in this case being abundant to sustain the judgment of the trial court, we should not reverse for the reception of this evidence.

The judgment should be affirmed, with one bill of costs as against all of the appellants. All concur, except FOLLETT and GREEN, JJ., dissenting.

FOLLETT, J. (dissenting). The children of Richard Curran might have followed this trust fund, and recovered it out of the assets of the firm of Curran & Goler. Undoubtedly, if Goler did not know that the money belonged to these children, but believed that it belonged to Curran, the children could not have maintained an action at law against Curran & Goler to recover the money; but that rule would not have barred them from recovering the funds out of the assets of the firm, if they could be traced into those assets. This presents the question whether one of two partners may, by an assignment of firm assets, pay or secure an equitable claim against the firm assets. It seems to me that this question must be answered in the affirmative. The position that the claim is void because interest was charged on

$2,700 cannot be supported. Richard Curran had deducted from the proceeds arising from the sale of the house a sum equivalent to his interest therein, on the principle of life annuities; and he was not entitled to a gross sum, and also to interest on the whole sum. As between Curran and his children, he would be chargeable with the sum and interest. There is no evidence in the record which tends to sustain the twenty-first finding of fact, that the bill of sale was fraudulent in fact. I think the children of Richard Curran acquired a valid lien by the bill of sale of December 9, 1895. The judgment should be reversed, and a new trial granted, with costs to the appellants to abide the event.

GREEN, J., concurs.