RACHEL A. JONES and SIDNEY S. SPRING, as Administrators, etc., of SAMUEL JONES, Deceased, Appellants, *v.* WILLIAM P. PERKINS and CHRISTINA PERKINS, Respondents.

*Personal transaction with a decedent — what testimony of an administratrix as to a transaction with her intestate does not justify a claimant against his estate in proving an independent transaction — a gift inter* vivos *must be clearly established by the donee.*

In an action brought by the administrators of one Samuel Jones to recover money loaned under an alleged agreement on the part of the defendants that they would execute and deliver to the said Samuel Jones a mortgage upon certain lands in the sum of $650, for the purpose of securing the payment of the loan made by the said Samuel Jones, a defense was interposed that the said $650, "given to the defendant Christian Perkins by the said plaintiffs' intestate, was an absolute gift to her."

Upon the trial of the action the widow and administratrix of Jones testified, in behalf of the estate, to a transaction between her intestate and the defendants, one of whom was his daughter, at which, as she alleged, the loan was made, and she also testified as to its terms. Thereafter, both the defendants were permitted to testify to an independent transaction had between themselves and the intestate, at which the administratrix was not present, the effect of which was to establish a gift by the intestate to his daughter of the money in question.

*Held,* that, although the administratrix had given her version of the matter, section 829 of the Code of Civil Procedure did not permit the defendants to

.testify to an independent transaction of theirs with the intestate which tended to confute the version of the administratrix;

That as the defendants had attempted to establish a gift *inter vivos*, they were bound to prove it by clear and satisfactory evidence.

APPEAL by the plaintiffs, Rachel A. Jones and another, as administrators, etc., of Samuel Jones, deceased, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Wyoming on the 29th day of September, 1897, as amended by an order entered in said clerk's office on the 28th day of October, 1897, upon the report of a referee, dismissing the complaint upon the merits.

· Plaintiff's complaint alleges that on the 20th day of June, 1892, and for a number of years prior thereto, the defendant William R. Perkins was the owner in fee of, and the defendant Christina Perkins had an inchoate right of dower in, certain lands particularly described in the complaint as seventeen acres, situated in the town of Middlebury, and that Samuel Jones, in his lifetime, about that date, loaned and advanced to the defendants the sum of $650 with which to pay a certain mortgage executed by the defendants to Theron Bullock upon the lands so described. The complaint alleges that the defendants agreed that they would " execute and deliver to the said Samuel Jones a mortgage upon the lands and premises above described in the said sum of six hundred and fifty dollars, for the purpose of securing the payment of the said loan so made by the said Samuel Jones to these defendants; said mortgage, by the terms of said agreement, to be due and payable five years from the date thereof, to wit, on the 20th day of June, 1897, with annual interest thereon."

It is alleged in the complaint that on the 21st of June, 1892, the defendants paid to Bullock the sum of $650, so received from said Jones, in discharge of the Bullock mortgage, and that that discharge was executed by him and recorded in the clerk's office of Wyoming county. It is further alleged that on the twenty-third of July the defendant William R. Perkins conveyed the said premises to the defendant Christina Perkins, who is now the owner of the premises. It is alleged that the defendants have refused and neglected to execute a mortgage upon the premises, and have not paid the sum of $650, or the interest thereon, or any

part thereof to the said Jones or to these plaintiffs, his legal representatives. It is alleged that on the 16th of April, 1896, Samuel Jones died in the town of Attica, and on the 8th of May, 1896, the plaintiffs were appointed administrators of the goods and chattels of the deceased; that they have duly qualified, and that on the 16th of July, 1896, the plaintiffs "tendered to the said defendants and each of them a mortgage upon the said lands and premises in the said sum of six hundred and fifty dollars, to be due and payable on the 20th day of June, 1897, with annual interest thereon, to these plaintiffs as such administrators as aforesaid, mortgagees, and requested the said defendants and each of them to join in the execution of the said mortgage, and that the said defendants and each of them refused and neglected so to do * * *."

Several of the allegations of the complaint are admitted, and the answer alleges that the $650 mentioned in the complaint, "given to the defendant Christina Perkins by the said plaintiffs' intestate, was an absolute gift to her, and that there was no agreement or understanding, expressed or implied, that such moneys so given to the defendant Christina Perkins, as aforesaid, were to be treated as a loan, but on the other hand it was expressly agreed that the same should be an absolute gift based upon the love and affection the said plaintiffs' intestate had for his said daughter, the defendant Christina Perkins, and the further consideration that the defendant William R. Perkins should thereafter make, execute and deliver the deed of conveyance" of the premises mentioned in the complaint.

The referee finds that the intestate on the 20th day of July, 1892, "went to the home of the defendants, in said town of Middlebury, and delivered to his daughter, the said defendant Christina Perkins, the sum of six hundred and fifty dollars, to satisfy and discharge the mortgage aforesaid, intending the same to be accepted and received by the said daughter for such purpose and upon condition that the said defendant William R. Perkins should convey by deed to the said defendant Christina Perkins the said real estate mentioned in the first finding of fact."

The referee also finds that the intestate "made no request or demand of the defendants, or either of them, for any security for the money so delivered as aforesaid * * *." The referee also

finds that Samuel Jones died on the 16th day of April, 1896, and on the 8th of May, 1896, the plaintiffs were appointed administrators of his goods and chattels. Exceptions were filed to the referee's report.

*John L. Woodworth*, for the appellants.

*O. P. Stockwell*, for the respondents.

HARDIN, P. J.:

To support the allegations of the complaint the plaintiffs called Rachel A. Jones, one of the plaintiffs, the administratrix, as a witness, and she testified : " Samuel Jones, deceased, and myself went down to Mr. and Mrs. Perkins, the defendants, about July, 1892. On that occasion he and I sat and counted the money in one hundred dollar packages. I would lay it on his knee as fast as it was counted. There was counted out $650.00 ; I counted it. That was at our home. On the next day Mr. Jones and I went down to the defendants' house at Dale. Mr. and Mrs. Perkins, the defendants, and myself and husband were there. There was no one else there. Mr. Perkins counted over this money there. Mr. Jones had handed it over to Mr. Perkins. This was the same money that was counted over at the house. I had a half dollar and gave it to Mrs. Perkins to have the mortgage recorded. There was talk that Mr. Bullock had a mortgage of $700 against the premises of Mr. Perkins at this time. * * * He said he would replace it to the old gentleman, or to father, as they called him. Mr. and Mrs. Perkins said they would give a mortgage to him."

Christina Perkins was then called as a witness in behalf of the defendants, who testified that she was a daughter of the deceased, and that in July, 1892, Theron Bullock held a mortgage of $650 on the premises described in the complaint. Continuing her testimony she said : " There was a time prior, a short time prior to the first of July, 1892, that I had a conversation with my father in regard to this mortgage. At the time of that conversation this mortgage was unpaid. Not anybody was present when I had this talk. Yes, sir, mother drove in the yard and sat in the buggy. There was a time when this mortgage held by Mr. Bullock was paid. Q. From whom did you receive the money with which the mortgage was paid? A.

My father. Mr. Perkins was present when I received it, not anybody else. Q. State what was said between you and your father in reference to his letting you have this money with which to pay this mortgage?" This question was objected to on several grounds; among others, that it was incompetent under section 829 of the Code of Civil Procedure. The objections were overruled and the plaintiffs took an exception. The witness answered: "A. He said he would give me the money to pay the mortgage if Mr. Perkins would deed me the place."

There was then a motion made by the plaintiffs to strike out the evidence, which was denied and an exception was taken. Thereupon the following question was propounded to her: "Q. Go on and state what further was said, if anything, between you and your father in reference to letting you have this money?" This question was objected to upon several grounds, and among others, that it was incompetent under section 829 of the Code of Civil Procedure, it being a personal transaction between this witness and the deceased party. The objections were overruled and an exception taken by the plaintiffs. "A. No, nothing only he, as I stated, Mr. Perkins, was to deed me the place if he would give me the money. * * * Mr. Perkins executed me a deed of the premises. * * * Q. State the conversation had between you and your father from the time when he first spoke to you or you to him about letting you have this money to the time when he did let you have it in reference to letting you have the money?" Similar objections were taken and overruled and an exception taken, and the witness answered: "Father drove in the yard and he asked if the mortgage was closed on the place. I said it was not; he asked when it would be; I said in a few days; he said I am going to give you the money to take the mortgage off your place; I said I don't know as I can pay it up; he said I will call for it when I want it; he came the next day and proposed to give me the money. He said he would give me the money if Mr. Perkins would deed me the place. Mr. Perkins said he would; Mr. Perkins and Mr. Jones sat down and counted the money for me; that was all that was said that day; father said to Mr. Perkins I can trust you to deed her the place; Mr. Perkins said yes, and he made out the deed the next day.

Referee : That was all that was said on that day between you and your father ?   A. Yes, sir."   A motion was made to strike out this last evidence and denied.   The witness continued : " He gave me six hundred and fifty dollars.   There was no other occasion when he gave me six hundred and fifty dollars with which to pay this mortgage with.   Mrs. Jones was not present; Mrs. Rachel Jones. * * *   Mrs. Jones I say wasn't there at all."

Subsequently William Perkins was sworn as a witness in behalf of the defendants and testified that he heard the testimony of his wife, and then the following question was propounded to him : " Q. Were you at your home on the day spoken of by her when the said Samuel Jones, the deceased, came there and gave her some money ? "   This was objected to and the objections were overruled and an exception was taken by the plaintiffs, and the witness answered : " Yes, sir.   Q. You may state what you heard said, if anything, between your wife and Samuel Jones, the deceased, on that occasion in reference to giving your wife money with which to pay a mortgage then held by Mr. Bullock against your place ? " This was objected to, and the plaintiffs' counsel was permitted to examine the witness, who, in response to such examination, testified, viz. : " Mrs. Rachel Jones, one of the plaintiffs, was not present on that occasion.   And that was a transaction between Samuel Jones, deceased, my wife and myself."   Thereupon the plaintiffs' counsel objected upon the grounds, among other things, that " under section 829 of the Code of Civil Procedure * * * it was a personal trans- action between Samuel Jones, deceased, this witness and his wife Christina Perkins, both of whom are parties to this action, and is not concerning the same transaction or communication testify* to by or on behalf of the plaintiffs in this action."   The objections were overruled and an exception was taken by the plaintiffs, and the witness was permitted to answer, viz. : " Well, he came there and my wife and he talked it over; he said if I would give my wife a deed of the place, he would give my wife the money to pay that mortgage, Bullock mortgage.   And I told them that I would do so. * * *   Q. Was there ever a time after this money transaction when Mr. Jones ever requested of you the payment of this money, the repayment of this money, or the giving of a mortgage, or

---

* *Sic.*

requested the same of your wife in your presence?" Similar objections were taken and overruled and exceptions taken, and the witness answered "No."

We think the rulings to which reference has been made were erroneous.

In *Ward* v. *Plato* (23 Hun, 402) it was held, viz.: "Under section 829 of the Code of Civil Procedure a party cannot be examined as a witness in his own behalf against the administrator of a deceased person, as to any personal transaction or communication had by him with the deceased, unless the administrator has been examined in his own behalf *concerning the same transaction or communication.*"

In *Martin* v. *Hillen* (142 N. Y. 144), in the course of the opinion, it was said: "Section 829 recognizes the right of a party, suing as executor or administrator, to testify in his own behalf to a personal transaction or communication between the witness and the deceased, if it is otherwise competent. In that case, the adverse party may also testify against the executor or administrator, *but the testimony, if it involves a personal transaction or communication with the deceased, must be confined strictly to the same transaction or communication to which the executor or administrator has already testified in his own behalf.* It was competent for the defendant, if he could, to testify in regard to the same transaction referred to by the plaintiff in her testimony. (*McLaughlin* v. *Webster*, 141 N. Y. 76.) Confining himself to that transaction, he could testify to any fact or circumstance that was a part of or involved in it that tended to contradict or weaken the plaintiff's version of it. *But he could not explain, impair or contradict the plaintiffs' version by means of another and independent personal transaction or communication between himself and the deceased.* The contention of the defendant's counsel is that the defendant could testify to any fact or circumstance that concerned the transaction testified to by the plaintiff, and any new or independent personal transaction, between the defendant and the deceased, that tended to contradict it, or show that it could not have occurred, was evidence of that character, and admissible. We think that such a construction of section 829 is not permissible. The words '*concerning the same transaction or communication*' were inserted in the section for the very purpose of rendering such a construction impossible. It would

open the door for the admission of all the evils which the section was intended to prevent, and would go far towards repealing it entirely, since the testimony of the executor or administrator bringing the action in his own behalf, to a single distinct personal transaction or communication, would open the way for the adverse party to testify to any other personal transaction or communication, or to any number of them, upon the ground that they tended to explain or contradict the single transaction or communication given in evidence by the plaintiffs. This would practically defeat the purpose which the Legislature had in view."

We think the rulings went beyond the rule thus laid down and explained, and that the evidence received under the rulings presented such evidence upon the critical issue which had been raised between the parties, that we ought not to say that it was not prejudicial to the plaintiffs. (*Matter of Eysaman,* 113 N. Y. 71; *Shaffer* v. *Martin,* 25 App. Div. 512.)

The witness, Christina Perkins, should have been limited to a contradiction of the evidence given by her mother, Rachel Jones, and confined to the transaction mentioned by Mrs. Jones in her testimony. (*Potts* v. *Mayer,* 86 N. Y. 302.)

The defense attempted was to establish a gift *inter vivos* of the $650, and the burden to make out that defense by clear and satisfactory evidence was cast upon the defendants. Without the improper evidence received from Mr. and Mrs. Perkins, the gift was not established within the rule applicable to such a gift. (*Rosenburg* v. *Rosenburg,* 40 Hun, 96; *Bump* v. *Pratt,* 84 id. 201; *Matter of Manhardt,* 17 App. Div. 1.)

The learned counsel for the respondents calls our attention to *Clark* v. *Bruse* (12 Hun, 277) and *Kelley* v. *Burroughs* (33 id. 349). We think that these cases do not support the contention of the learned counsel; and due deference to the cases to which we have already referred requires us to hold that the rulings of the referee were erroneous, and that the evidence was prejudicial to the plaintiffs, and that a new trial should be ordered.

All concurred.

Judgment reversed and new trial ordered, with costs to the appellants to abide the event.